**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Andre Raymelle WATLEY, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 2013.

Filed Nov. 25, 2013.

Eric K. Dowdle, Allentown, for appellant.

Robert Eyer, Assistant District Attorney, Easton, for Commonwealth, appellee.

BEFORE: STEVENS, P.J.,* FORD ELLIOTT, P.J.E., BOWES, GANTMAN, PANELLA, SHOGAN, LAZARUS, MUNDY, and OTT, JJ.

OPINION BY BOWES, J.:

Andre Raymelle Watley appeals *nunc pro tunc* from the judgment of sentence of twelve years and four months to twenty-five years incarceration after a jury convicted him of possession with intent to deliver ("PWID") Ecstasy, conspiracy to commit PWID, possession of Ecstasy, possession of a small amount of marijuana, false identification to law enforcement, and two counts of firearms not to be carried without a license. The trial court also adjudicated Appellant guilty of two summary traffic offenses, speeding and driving

* President Judge Stevens did not participate in the consideration or decision of this case.

while operating privileges are suspended or revoked. After careful review, we affirm.

State police effectuated a traffic stop of Appellant and his passenger, Randy Hayward, after observing them traveling at ninety-five miles per hour in a forty-five mile per hour zone. The stop occurred at approximately 1:45 a.m. on February 14, 2009, on State Route 22 in Northampton County, Pennsylvania. After pulling over the vehicle, Trooper Michael Acevedo and Trooper Lucas Lohrman approached. Trooper Lohrman walked to the passenger's side of the car while Trooper Acevedo went to the driver's side, where Appellant was seated. When asked why he was traveling at such a high rate of speed Appellant indicated that he was going to Easton Hospital. However, Appellant had passed two exits leading to the hospital. Appellant turned over to police a Pennsylvania identification card with the name "Chonce Acey." Hayward informed police that he was Jermaine Jones, and his birth date was October 4, 1982, but he was unable to provide his social security number.

The troopers ran the information and learned that Jermaine Jones was an alias for Hayward, who had an outstanding warrant for his arrest in New Jersey. Trooper Lohrman removed Appellant from the car and took the keys to the vehicle before allowing Appellant to re-enter it. The troopers also asked Hayward to exit the vehicle. When Hayward stepped from the vehicle, police noticed that the floor mat was raised into a high bump and an object appeared to be underneath it. While placing Hayward under arrest, Trooper Acevedo lifted the floor mat and discovered a loaded .22 caliber handgun. Trooper Acevedo promptly alerted his partner, drew his own weapon, and ordered Appellant to step from the car and show his hands. Rather than comply, Appellant who was on his cellular phone, fled the scene by running across the road and its median before crossing the opposing lanes of travel and into a wooded area. Trooper Acevedo gave chase for approximately fifteen minutes, but was unable to locate Appellant.

Before police ordered the towing of the vehicle, Hayward requested a jacket that was in the backseat. Police searched the coat for weapons before turning it over to Hayward and discovered two receipts from Western Union containing Appellant's name. Police also obtained a search warrant for the car and discovered a .25 caliber pistol, a .25 caliber magazine, a box of .22–caliber ammunition, a container with a small amount of marijuana, and thirty-four Ecstasy pills.[1] These items were located in the passenger side glove compartment.

Hayward provided police with a written statement, as follows:

On the date of February 13th I was picked up by "TEF" whose real name is Andre Watley around 6'o[']clock in the evening he was driving a [I]mpala (silver) which he told me was rented for him by a female friend by the name of Erica[.] [W]e proceeded to drive thru Allentown while he made his drops and transactions[.] [A]round 10 or 11 I got dropped off at Philly's sport[s] bar on Hamilton for a few while he had to go get something. He picked me up around 11:30 or 12 and told me about a party going on in Easton at Larry Holmes Ringside Bar and Grille so we headed out that way about 1:15 or so before we made it to Ringside we were pulled over on 22 East. When the officers initially turned the lights over he stated let's keep going we can outrun

1. The weight of the Ecstasy pills was 10.6 grams.

them and I stated "no" because we were only speeding and that's when Andre Watley told me there's a slammer under the seat which means "gun" and I said so it's not min[e] and he said it isn't mine either by then the officers were at my window asked for License reg. insurance and ID[.] I didn't have mine and gave them my alias Jermaine Jones which came back as my real name Randy Hayward[.] I was then taken into custody and the gun was found under the seat and Andre took off running. Commonwealth's Exhibit 6, Hayward Statement.

Prior to Appellant's trial, Hayward also pled guilty to conspiracy related to the firearms possession and admitted that he was in a vehicle driven by Appellant that contained two firearms and that he was not licensed to carry such weapons. This information was presented to the jury. When he testified at Appellant's trial, however, Hayward denied knowing Appellant or having been with Appellant on the morning of the stop. In addition, he denied any knowledge of Ecstasy being in the car or that police provided him with his *Miranda* rights, and he did not remember writing the drops and transactions statement. That statement, which was adopted by Hayward, was introduced as substantive evidence.

The jury returned guilty verdicts on the aforementioned charges. The court imposed a mandatory minimum sentence of five years pursuant to 42 Pa.C.S. § 9712.1.[2] In addition, the court sentenced Appellant to a consecutive three and one-half to seven year term of imprisonment for both firearms not to be carried without a license convictions, and a consecutive

---

2. The statute reads in relevant part:

**§ 9712.1. Sentences for certain drug offenses committed with firearms**
(a) **Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

\*   \*   \*   \*   \*   \*

(c) **Proof at sentencing.**—Provisions of **this section shall not be an element of the crime,** and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and **shall determine, by a preponderance of the evidence,** if this section is applicable.

42 Pa.C.S. § 9712.1 (footnote omitted) (emphases added).

This statute is no longer constitutionally sound in light of *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which overruled *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) and *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *Cf. Commonwealth v. Stokes,* 38 A.3d 846, 860 n. 8 (Pa.Super.2011) (discussing 42 Pa.C.S. § 9712, *Harris* and *McMillan* and opining that § 9712 would be unconstitutional if *Harris* and *McMillan* were overruled). *Alleyne* held that facts leading to an increase in a mandatory minimum involving a federal firearms brandishing statute must be presented to a jury and proven beyond a reasonable doubt or a defendant's jury trial rights are infringed. Appellant, however, has not challenged the constitutionality of the statute. We discuss *Alleyne* in the body of this opinion insofar as it relates to the legality of Appellant's sentence.

period of four months to one-year incarceration for the false identification count. Appellant filed a timely post-sentence motion, which the trial court denied. Appellant did not file a timely direct appeal. Instead, Appellant filed a petition pursuant to the Post–Conviction Relief Act, seeking reinstatement of his direct appeal rights *nunc pro tunc.* The court afforded relief, and this appeal ensued. A panel of this Court reversed Appellant's convictions for PWID and conspiracy to commit PWID in an unpublished memorandum, with one judge dissenting. The Commonwealth sought re-argument, which this Court granted.

Appellant now presents two issues for our review:

(1) Whether the verdict for unlawful possession of a controlled substance with intent to deliver was against the sufficiency of the evidence.

(2) Whether the verdict for conspiracy—unlawful possession of a controlled substance with intent to deliver was against the sufficiency of the evidence.

Appellant's brief at 6.

▌ Both of Appellant's issues implicate the sufficiency of the evidence introduced at trial. In analyzing such claims, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Brown,* 52 A.3d 320, 323 (Pa.Super.2012). Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. *Commonwealth v. Hopkins,* 67 A.3d 817, 820 (Pa.Super.2013). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Brown, supra* at 323. Of course, "the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id.*

▌ The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* Additionally, "the entire record must be evaluated and all evidence actually received must be considered." *Id.*

Appellant relies extensively on *Commonwealth v. Kirkland,* 831 A.2d 607 (Pa.Super.2003) (Opinion by Bowes, J.), and argues that, absent expert testimony, his conviction cannot be sustained. In *Kirkland,* police responded to a domestic dispute and arrived at the defendant's home. Kirkland's wife informed police that Kirkland threatened her with a gun and assaulted her. Police searched Kirkland's person, and found car keys, a pocket knife, and a screwdriver. Kirkland's wife then told police that the gun could be in Kirkland's car. When peering through the window of the car, police observed a dinner plate with a white chunky substance on the backseat. The substance tested positively for cocaine and weighed 6.876 grams. Also in the car were several unused ziplock packets and a razor blade with cocaine residue. We held in *Kirkland* that the evidence was insufficient to sustain his PWID conviction since there was no evidence Kirkland intended to deliver the substance and the amount of co-

caine itself could have been for personal use.

Appellant maintains that

> This case is analogous to *Kirkland* in that: (1) the vehicle allegedly operated by Watley was not located in an area known for drug activity; (2) no currency was discovered; (3) Watley was not in possession of scales or other tools used in the drug trade, and no tools were uncovered in the vehicle; (4) Watley was not in possession of any dilutants or other paraphernalia used by dealers, nor were any uncovered in the vehicle; and (5) no testimony was presented to support the proposition that Watley had ever sold a controlled substance or intended to sell a controlled substance.

Appellant's brief at 14. Additionally, Appellant submits that the average juror "had no way of knowing whether a typical dose [of Ecstasy] would be one pill or all thirty-four (34)." *Id.* at 15. Appellant contends that, absent expert testimony, the fact that Hayward said Appellant was engaged in "drops and transactions" required the jury to speculate on the meaning of that phrase. He continues, ignoring our standard of review, by alleging that Hayward's statements "should carry little weight[.]" *Id.* at 16.

The Commonwealth counters that it established Appellant constructively possessed the drugs in question since they were located within the glove compartment of the car he was driving. Commonwealth's brief at 15 (citing *Commonwealth v. Haskins*, 450 Pa.Super. 540, 677 A.2d 328, 330 (1996)). It then highlights that it is a reasonable inference based on the evidence that the phrase "drops and transactions" applied to Appellant's distribution of Ecstasy. According to the Commonwealth, Hayward's statement "was direct, substantive evidence that amounted to an eyewitness account of Watley actually involved in delivering drugs." *Id.* at 16.

The Commonwealth continues that Appellant's argument that expert testimony was required "represents an incorrect statement of the law." *Id.* Rather, the Commonwealth submits that expert testimony is important in cases where other evidence cannot establish intent to distribute. Since Appellant unlawfully possessed two handguns, thirty-four Ecstasy pills, and was engaging in drops and transactions, it contends that expert testimony was not mandated.

We begin by noting that much of Appellant's argument fails to consider our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth as verdict winner. Further, Appellant overlooks the fact that this Court does not re-weigh the evidence nor do we engage in credibility determinations. Our standard of review mandates that we draw all reasonable inferences in favor of the Commonwealth as the verdict winner. *Hopkins, supra.*

■ Although expert testimony can be beneficial, it is by no means necessary. Pointedly, while many cases have opined that expert testimony is an important consideration in determining whether a person intended to deliver a controlled substance, no case has ever held that the absence of such testimony automatically renders the evidence insufficient to sustain a PWID conviction. Indeed, determining whether a person possesses a drug for personal use or with intent to deliver is based upon the totality of circumstances. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233 (2007). In *Ratsamy*, the Supreme Court opined,

> The amount of the controlled substance is not "crucial to establish an inference of possession with intent to deliver, if ... other facts are present." *Common-*

*wealth v. Ariondo,* 397 Pa.Super. 364, 580 A.2d 341, 350–51 (1990). The Superior Court's own cases follow this reasoning. *See, e.g., Commonwealth v. Brown,* 904 A.2d 925, 931–32 (Pa.Super.2006), *appeal denied,* 591 Pa. 710, 919 A.2d 954 (2007) (the totality of the circumstances established sufficient evidence to support a conviction for possession with intent to deliver); *Commonwealth v. Drummond,* 775 A.2d 849, 853–54 (Pa.Super.2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001) (the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence; the court looks to all facts and circumstances in each case surrounding the possession of the controlled substance).

*Id.* at 1237.

■ Here, properly viewing the evidence in a light most favorable to the Commonwealth, thereby giving it the benefit of the reasonable inferences derived therefrom, the proof was that Appellant engaged in drops and transactions, there were two firearms and ammunition in close proximity to the Ecstasy pills, ammunition for those firearms was in the vehicle, and Appellant fled from police after providing a false identification. Police could not search Appellant for money or additional contraband because he fled the scene and was not immediately apprehended. The fact that Appellant's successful attempt to elude police could possibly be consistent with his possessing drugs for personal use entirely neglects to consider the evidence in the light most favorable to the Commonwealth and would reward Appellant for his flight. This case is simply not one where the evidence is so weak and inconclusive that there is no probability of fact that Appellant was selling Ecstasy. Based on the evidence, the jury could, and did, rea-

sonably infer that Appellant was engaged in that activity.

In addition, Appellant's reliance on *Kirkland, supra,* is misplaced. *Kirkland* should not be read to suggest expert testimony is mandated where an alleged small amount of drugs are found. In *Kirkland,* there was no evidence that the defendant was selling drugs. In contrast, in the present case, the Commonwealth introduced evidence that Appellant was engaged in "drops and transactions," a term that the ordinary juror is intelligent enough to interpret, in light of the additional evidence, as selling drugs. In fact, this is precisely what the Commonwealth argued to the jury. Further, in *Kirkland,* no guns were located in close proximity to the drugs nor did the defendant flee the scene prior to being searched. Hence, *Kirkland* is neither factually analogous nor dispositive.

■ Appellant also challenges the sufficiency of the evidence in relation to his conspiracy conviction. This Court in an *en banc* decision recently outlined the applicable law in evaluating a conspiracy to commit PWID conviction. *See Commonwealth v. Feliciano,* 67 A.3d 19 (Pa.Super.2013) (*en banc*). Therein, we stated,

Section 903 of the Crimes Code sets forth the crime of conspiracy.

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

·(2) agrees to aid such other person or persons in the planning or commission

of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903.

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super.2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id.* *Feliciano,* supra at 25–26.

■ Appellant argues that there was "no evidence presented to support the proposition that Watley and Hayward formed an agreement to commit an unlawful act." Appellant's brief at 18. Appellant suggests that the contraband was for Hayward's personal use. Again, ignoring our standard of review, Appellant continues that Hayward denied knowing Appellant and that the Commonwealth did not present evidence demonstrating that the two men knew each other. According to Appellant, the evidence only established two men in a vehicle with drugs. The Commonwealth replies that the evidence supporting Appellant's PWID conviction also supports that he and Hayward entered into an agreement to possess and distribute Ecstasy.

Instantly, viewing the facts in a light most favorable to the Commonwealth, the jury plainly rejected as incredible Hayward's testimony that he was not in the car with Appellant on the morning of the stop and did not know him. Hence, the Commonwealth established that Appellant and Hayward were affiliated and friends with one another. It also proved, based on the logical and reasonable inferences from the evidence, that Hayward had knowledge of Appellant's possession of Ecstasy since Hayward provided a statement to police that Appellant engaged in drops and transactions while Hayward was present. In addition, both men constructively and illegally possessed the firearms in the car while they made the drops and transactions. The jury could reasonably have inferred that Hayward was aiding Appellant in these endeavors despite his contrary claims. Thus, a conspiratorial agreement to engage in the sale of Ecstasy could be inferred by the jury based on the circumstantial evidence presented.

We are aware that during the pendency of this first as-of-right direct appeal, the United States Supreme Court decided *Alleyne v. United States,* ⸺ U.S. ⸺, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Therein, the Supreme Court held that the defendant's jury trial rights were infringed where the federal court applied a federal mandatory minimum statute for brandishing a firearm where the fact of brandishing was not presented to the jury or established beyond a reasonable doubt. The *Alleyne* decision expressly overturned *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), a decision that had upheld a challenge to *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), following *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In *McMillan,* the defendant alleged that Pennsylvania's mandatory minimum statute at 42 Pa.C.S. § 9712, a closely analo-

gous statute to the applicable mandatory statute herein, was unconstitutional because the fact that the defendant visibly possessed a firearm was not presented to the jury and established beyond a reasonable doubt. According to the *Alleyne* Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The *Alleyne* decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions[3] constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.[4] The court sentenced Appellant under 42 Pa.C.S. § 9712.1, a mandatory minimum statute allowing a judge to increase a sentencing floor based on a preponderance of the evidence finding that the defendant or his accomplice possessed a gun during the commission of PWID.

Ordinarily, new rulings pertaining to cases on direct appeal are entitled to retroactive effect so long as the applicable issue is preserved. *Commonwealth v. Lofton*, 57 A.3d 1270, 1276 (Pa.Super.2012).[5] Appellant did not preserve any challenge to his mandatory minimum sentence, his jury trial rights, or the constitutionality of § 9712.1, likely because similar challenges had been rejected based on prior United States Supreme Court decisions. The constitutionality of a statute can be waived. *See Commonwealth v. Hartz*, 367 Pa.Super. 267, 532 A.2d 1139, 1142–1143 (1987) (*en banc*) (Cirillo, P.J. concurring) (collecting cases); *see also Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042 (2003); *Commonwealth v. Wallace*, 368 Pa.Super. 255, 533 A.2d 1051 (1987).

Nonetheless, while we are cognizant that *Alleyne* was a Sixth Amendment jury trial rights case, it necessarily implicated Pennsylvania's legality of sentencing construct since it held that it is improper to sentence a person to a mandatory minimum sentence absent a jury's finding of

3. The constitutionality of statutes permitting prior convictions to automatically increase a defendant's sentence beyond the statutory maximum absent a jury finding has been called in question based on a similar rationale discussed in *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (Thomas, J. concurring); *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J. dissenting); *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (Scalia, J. dissenting) (opining that where prior convictions result in a sentence that otherwise exceeds the statutory maximum a jury determination of the prior convictions is required); *but see Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800 (2004). The precise issue has yet to be reconsidered by the United States Supreme Court following *Apprendi*. *See Alleyne, supra* at 2160 n. 1.

4. *See e.g.*, 42 Pa.C.S. § 9712(c); 42 Pa.C.S. § 9712.1(c); 42 Pa.C.S. § 9713(c); 42 Pa.C.S. § 9718(c); 42 Pa.C.S. § 9719(b); 18 Pa.C.S. § 7508(b); 18 Pa.C.S. § 6317(b).

5. We note that there is a fundamental difference between retroactivity analysis during a direct appeal and cases on collateral review. In the context of federal *habeas* review, the United States Supreme Court has stated, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a " 'watershed rule of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (internal citations omitted); *see also Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).

facts that support the mandatory sentence.[6] Application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits. *See Commonwealth v. Foster,* 960 A.2d 160 (Pa.Super.2008), *affirmed,* 609 Pa. 502, 17 A.3d 332 (2011) (OAJC); *Hopkins, supra* at 821. Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court. *See Hopkins, supra; Commonwealth v. Infante,* 63 A.3d 358 (Pa.Super.2013).

This Court is aware of the issue preservation and retroactivity concerns, relative to broadening legality of sentence questions beyond sentences that exceed the statutory maximum and merger, expressed by Chief Justice Castille in his concurring opinions in *Foster,* 609 Pa. 502, 17 A.3d 332 (Castille, C.J. concurring), *Commonwealth v. Roney,* 581 Pa. 587, 866 A.2d 351, 362–365 (2005) (Castille, J. concurring), and *Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800, 812–816 (Castille, J. concurring). Moreover, aside from the inherent complexities with retroactivity and illegal sentence issues, we acknowledge that both currently and in the past, Pennsylvania courts have struggled with the concept of illegal sentences. Most notably, this Court has grappled with the illegal sentencing doctrine as jurisprudence on such issues as constitutional sentencing challenges and the difference between legal sentencing questions and an illegal sentence have emerged. *See Foster,* 960 A.2d at 164

(citing *Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 99 (2007)); *Commonwealth v. Archer,* 722 A.2d 203 (Pa.Super.1998) *(en banc )* (distinguishing between a legal question involving sentencing and an illegal sentencing claim); *Hartz, supra.*

We do not, however, read the majority opinions in *Aponte* or *Roney* as mandating that all constitutional cases implicating sentencing raise legality of sentence concerns. *See Commonwealth v. Jacobs,* 900 A.2d 368, 373 n. 6 (Pa.Super.2006) *(en banc ).* Rather, it is only the narrow class of cases already considered to implicate illegal sentences such as double jeopardy, *Apprendi* challenges,[7] mandatory minimum sentencing, and other traditional illegal sentencing claims pertaining to sentences that exceed the statutory maximum, which are not subject to traditional issue preservation. *See also Wallace, supra,* (finding that labeling a sentencing challenge as constitutional does not automatically transform it into a non-waivable illegal sentencing claim). Since this Court may *sua sponte* address a sentence based on its illegality, and, based on existing precedent, an *Alleyne* claim can present a legality of sentence issue, we address Appellant's mandatory minimum sentence.[8]

Instantly, the jury determined that Appellant possessed the firearms in question as it found him guilty of two separate firearms violations. The firearms in question were undisputedly located within the

---

6. The majority in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) rejected the contention of Chief Justice Roberts in his dissent that a defendant's jury rights were not violated because the defendant could have been sentenced to the same period of incarceration absent a jury finding of the facts triggering the mandatory.

7. *Apprendi* issues have been viewed as raising an illegal sentence question because it in-

volves sentencing a defendant in excess of the statutory maximum, the classic illegal sentence paradigm, based on facts not presented to and/or determined by a jury.

8. We are cognizant that Appellant has not attempted to contest his sentence on appeal, contrary to those cases in which we have discussed mandatory minimums and legality of sentence matters.

same vehicle as the Ecstasy; indeed, one of the guns was found in the same glove compartment as the drugs. Hence, the jury did determine beyond a reasonable doubt the facts necessary to subject Appellant to the mandatory minimum, *i.e.,* that Appellant possessed the firearms when he committed the PWID offense.

Nevertheless, in *Commonwealth v. Johnson,* 910 A.2d 60 (Pa.Super.2006), and *Commonwealth v. Kearns,* 907 A.2d 649 (Pa.Super.2006), this Court concluded that specific jury findings relative to the charge for which the defendant is being sentenced are necessary where *Apprendi* is implicated. In *Johnson,* the panel addressed a claim that the defendant's sentence of seventeen and one-half years to forty years for attempted murder was illegal where the victim was shot in the foot. The statutory maximum for attempted murder is twenty years absent a finding that the victim suffered serious bodily injury, in which case the maximum increases to forty years. The *Johnson* Court reasoned that any finding by the jury of serious bodily injury for aggravated assault could not be used to infer that the jury found serious bodily injury for the attempted murder charge.

Similarly, the *Kearns* panel, in discussing a jury trial right claim, asserted that a conviction at one count does not establish an element necessary for increasing a sentence at another charge. In *Kearns,* a jury convicted the defendant of involuntary manslaughter and endangering the welfare of children ("EWOC") as well as several other charges. The defendant argued that his jury trial rights were violated as it related to the manslaughter charge because the jury did not find that the victim was under twelve or that the child was in his care, custody or control, and he was sentenced to a higher maximum based on those facts.

■ The Commonwealth argued that it presented uncontradicted evidence that the victim was two years old and was in the care, custody and control of the defendant. In addition, the Commonwealth maintained that the defendant's conviction for EWOC established that the victim was in his care, custody and control. The panel rejected those arguments, first by stating that the volume of evidence presented does not "stand as a proxy for a specific finding by the factfinder." *Kearns, supra* at 658. It also found that utilizing a jury finding on another charge for enhancing a sentence required what it labeled "intracase collateral estoppel[,]" *id.* at 659, which it viewed as improper. Finally, the *Kearns* Court asserted that the elements of EWOC did not align with or establish the care, custody and control aspect of involuntary manslaughter. Under the reasoning of the *Johnson* and *Kearns* panels, since juries may render inconsistent verdicts, it is necessary that the element giving rise to the sentencing increase be specifically found by the jury in relation to the count on which the defendant is being sentenced.

■ However, while we allow inconsistent verdicts, that doctrine is used to prevent overturning convictions that are inconsistent with an acquittal on another charge, not to disregard a jury's factual findings on valid convictions. *See Commonwealth v. Frisbie,* 889 A.2d 1271, 1273 (Pa.Super.2005) ("this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict."). The fact that we accept a jury's ability to potentially exercise leniency does not require us to disregard, for purposes of sentencing, its uncontroverted determination of facts that subject a defendant to an increased punishment, which under then-existing law did not have to be alleged in the criminal information. Indeed, an ac-

quittal is not considered a specific factual finding. *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375, 376 (1971). More importantly, neither *Johnson* nor *Kearns* involved retroactivity concerns since *Apprendi* was decided well before the defendants' trials in those cases. Phrased differently, the Commonwealth in *Johnson* and *Kearns* could have simply followed *Apprendi*, whereas here, the prosecution was proceeding under prevailing law. A case far more analogous to the one presented here is *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

In *Cotton*, the United States Supreme Court declined to reverse several sentences based on an *Apprendi* claim that was raised for the first time on appeal, where *Apprendi* had not been filed at the time of sentencing. In *Cotton*, a federal grand jury returned an indictment against multiple defendants for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. The original indictment specified the charge as involving five or more kilograms of cocaine and fifty grams or more of cocaine base. A subsequent superseding indictment, however, only alleged that there was a detectable amount of cocaine and cocaine base. The amount of cocaine and cocaine base triggered an increased statutory maximum.

A jury convicted the defendants, and the district court found, based on the evidence introduced at trial, that the increased statutory maximum was applicable. While the defendants' case was pending on appeal, the Supreme Court decided *Apprendi*. Thereafter, the defendants contended for the first time that their sentences were invalid because the drug quantity was not included in the indictment or submitted to the petit jury. A divided Fourth Circuit Court of Appeals vacated the sentences based on *Apprendi*, concluding that the federal plain error doctrine applied and that a court is without jurisdiction to impose a sentence for an offense not charged in an indictment. The High Court reversed, first finding that a defect in a federal indictment is not jurisdictional and opining that the evidence establishing the sentencing enhancement was overwhelming and essentially uncontroverted. The court found that no plain error existed and that sentencing the defendant based on facts not included in the indictment or presented to the petit jury was not improper.

Although Pennsylvania law no longer has plain error review, illegal sentencing claims are one of the few remaining vestiges of that doctrine. *See Foster*, 17 A.3d at 355 (Saylor, J. concurring). Accordingly, we find *Cotton* instructive and persuasive. Contrary to the defendant in *Johnson*, who contested the facts necessary to increase his sentencing maximum, namely, whether serious bodily injury resulted from shooting the victim therein in the foot, Appellant never disputed the evidence that the firearms were in close proximity to the Ecstasy. Rather, Appellant challenged that he was the person present in the vehicle who fled the scene, *i.e.*, identity.[9] Appellant certainly was on notice that the Commonwealth sought to prove that he possessed two firearms and the jury was presented with evidence of those facts. More important, the jury's finding on the two firearms charges in this matter is directly aligned with the require-

---

9. Appellant also did not contest that the firearms were within reach of Hayward, his accomplice; however, by maintaining that he was not the person in the car with Hayward, it could be implied that he contested whether Hayward was an accomplice as well as whether the gun was within his own reach.

ment under § 9712.1 that the defendant possess a gun, as opposed to the EWOC and involuntary manslaughter elements issue in *Kearns*. Succinctly put, the jury did render a specific finding as to whether Appellant possessed the handguns found in the car; the reason it did not do so in conjunction with the PWID count is that the prevailing law at the time, unlike in *Kearns* and *Johnson*, did not require such a procedure.

Similar to *Cotton*, the uncontroverted evidence in the instant case established that one firearm was located in the same glove compartment as the drugs and another handgun was located on the passenger-side floor in close proximity to the drugs, and the jury determined beyond a reasonable doubt that Appellant possessed those firearms. Therefore, the facts necessary to establish application of the mandatory minimum sentence not only were essentially undisputed and overwhelming, they were determined by the jury. Since Appellant was convicted of PWID and unlawfully possessing two firearms relative to the same incident, the factual predicates for determining the mandatory minimum were proven to a jury beyond a reasonable doubt, and his sentence is not illegal.

Judgment of sentence affirmed.

Judge LAZARUS files a Dissenting Opinion in which Judges SHOGAN and OTT join.

DISSENTING OPINION BY LAZARUS, J.

I respectfully dissent. The majority today allows a jury's speculative verdict to withstand muster. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, together with all reasonable inferences therefrom, I believe that the trier of fact could not have found each and every element of PWID beyond a reasonable doubt. Specifically, the evi-dence at trial was insufficient to allow the jury to properly draw the inference that Watley had the specific intent to deliver or distribute Ecstasy.

In this case, the jury needed expert testimony to make the crucial determination as to whether possession of 34 pills of Ecstasy represents an amount an individual intends to sell or personally use. Without such testimony, the jury's verdict is infirm and Watley's conviction for PWID must be reversed. The majority's statement that "no case has ever held that the absence of [expert] testimony automatically renders the evidence insufficient to sustain a PWID conviction," Majority Opinion, at 114, completely misses the mark. There is abundant case law indicating that there are many instances where it is not clear whether a substance is being used for personal consumption or distribution. While expert evidence on whether a given quantity of a drug may not be necessary in *every* PWID case, in cases like this where a fact finder, based upon a totality of the circumstances, simply does not have enough evidence to make that determination, it is critical.

Specifically, in these types of cases the Commonwealth must present evidence of other factors, such as the manner of drug packaging (individual baggies/glassine packets), presence of drug distribution paraphernalia (scales, razor blades), large sums of cash found on the defendant, and/or behavior of the defendant, in order to prove, beyond a reasonable doubt, that the defendant possessed the given drug with the intent to deliver. In many of those cases, expert testimony is the critical "other factor" that proves PWID. *See Commonwealth v. Jackson*, 435 Pa.Super. 410, 645 A.2d 1366 (1994) (where it is not clear whether substance is being used for personal consumption or distribution, final

factor to be considered is expert testimony). *See also Commonwealth v. Kirkland*, 831 A.2d 607, 612 (Pa.Super.2003) (case "demonstrate[ing] the importance of expert testimony in drug cases where the other evidence does not overwhelmingly support the conclusion that the drugs were intended for distribution" even where razor blades and unused ziplock (drug paraphernalia) baggies found in car with drugs).

As our Court recognized in *Commonwealth v. Bagley*, 296 Pa.Super. 43, 442 A.2d 287 (1982):

Expert opinion testimony elicited to determine whether the quantity of [drugs] seized from a defendant was consistent with possession for personal use or with sale or distribution has been admitted in a number of cases to support the inference that the controlled substance was possessed with the intent to deliver or distribute. *See, e.g., Commonwealth v. Wallace*, 265 Pa.Super. 91, 401 A.2d 816 (1979); *Commonwealth v. Sojourner*, 268 Pa.Super. 472, 408 A.2d 1100 (1978), affirmed on rehearing, modified on other grounds, 268 Pa.Super. 488, 408 A.2d 1108 (1979); *Commonwealth v. Harris*, 241 Pa.Super. 7, 359 A.2d 407 (1976); *Commonwealth v. Brown*, 232 Pa.Super. 463, 335 A.2d 782 (1975).... *Compare Commonwealth v. Sojourner, supra*, 268 Pa.Super. at 477, 408 A.2d at 1102 (the expert testimony of a police officer experienced as an undercover narcotics agent that a person who had fifty bags of heroin more than likely had them for sale was sufficient to permit the jury to infer intent to deliver); and *Commonwealth v. Brown, supra*, 232 Pa.Super. at 466, 335 A.2d at 784 (where appellant possessed three bundles of glassine packets and the bundles contained 25, 25, and 21 packets respectively for a total of seventy-one packets, and an experienced police narcotics agent testified that street vendors of heroin frequently package their product in bundles of twenty-five glassine envelopes, such evidence was sufficient to support the inference that the possessor intended to distribute the drugs rather than retain them for personal use).

*Id.* at 290–91.

Here, the trial judge, himself, acknowledged that "[t]he quantity [of Ecstasy] does not suggest in and of itself that this was, *per se*, with intent to deliver." N.T. Trial, 7/14/2010, at 73 (emphasis added). Therefore, because the intent to distribute could not be inferred by the sheer quantity of the seized drugs, the fact-finder had to analyze additional factors to make a final legal determination on the issue. *Commonwealth v. Jackson*, 435 Pa.Super. 410, 645 A.2d 1366, 1368 (1994). Instantly, the officers did not observe any exchange or transaction of the controlled substances between Watley and a third party, nor did they find drug-dealing paraphernalia in Watley's vehicle where the drugs were recovered. Moreover, to the extent that the Majority uses the facts that there were firearms and ammunition found in Watley's vehicle and that Watley fled from police and provided the authorities false identification to support the PWID conviction, I would again disagree. These facts may bear on Watley's consciousness of guilt or an increased likelihood of being involved in drugs, but these additional factors do not substantiate that he possessed the Ecstasy pills with the intent to deliver them. Such evidence could just as easily support a verdict of possession with intent to use drugs.

Finally, the Majority places great emphasis on Hayward's post-arrest (and later recanted) statement, indicating that he drove through Allentown with Watley

while Watley made "drops and transactions." Commonwealth Exhibit 6, Hayward's Custodial Written Statement, 2/20/2009. While we cannot second-guess the trier of fact's credibility determinations, nor are we permitted to re-weigh evidence, I do not believe that this fact establishes that Watley intended to distribute Ecstasy beyond a reasonable doubt.

For these reasons, I must dissent and would reverse Watley's PWID conviction. Moreover, without sufficient evidence to prove that Watley intended to commit or aid in the commission of possessing the Ecstasy with the intent to deliver, Watley's conviction for conspiracy (PWID) should also be reversed.