J-A21001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SIM AMIN MORTON, | |
| Appellant | No. 561 EDA 2013 |

Appeal from the Judgment of Sentence October 2, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002070-2012

BEFORE: BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                          **FILED AUGUST 28, 2014**

Sim Amin Morton appeals from the judgment of sentence of thirteen to twenty-six years incarceration to be followed by four years of probation imposed by the trial court. A jury found him guilty of attempted murder, aggravated assault, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, possession of an instrument of crime, and persons not to possess a firearm.[1] After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The jury did not determine the person not to possess a firearm charge until after it returned its verdicts on the remaining charges. Following those guilty verdicts, the jury was instructed that Appellant had a disqualifying offense and was instructed on the elements of the relevant crime before finding Appellant guilty. The jury also acquitted Appellant of a charge of aggravated assault relative to the girlfriend of the victim herein.

Shortly before midnight on September 28, 2011, police received a report of shots fired on the 1000 block of North Edgewood Street, Philadelphia. They ultimately recovered eight fired cartridge casings from a .40 caliber weapon. When police arrived on the scene, they observed that a window to a store had been shattered, and across the street a passenger-side window to a vehicle had been shot out. A man, Evan Davis, approached police from the area of the vehicle and indicated that he had been shot. The victim was transported to the Hospital of University of Pennsylvania along with his girlfriend, Shynetta Benyard, who was uninjured. While police were transporting Mr. Davis to the hospital, he instructed Ms. Benyard to cease describing the shooter to police. Mr. Davis also, while at the hospital, initially described his assailant as a slim black male, between six feet and six feet two inches in height, who was wearing black pants with a red stripe down the legs and black and red shoes. Later when speaking with police, Mr. Davis refused to provide the race of the individual who shot him or to identify Appellant.

Mr. Davis' mother, Donna Kearns, was outside of her home on Edgewood Street at the time of the shooting. She indicated that earlier in the evening there had been an argument between Mr. Davis' girlfriend and a prior girlfriend, while her son and his girlfriend were congregating with a group of other individuals. Appellant was involved in the dispute. After the

argument ended, Mr. Davis and Ms. Benyard went over to her vehicle when shots rang out.[2]

Ms. Kearns indicated to police at approximately 2:00 a.m., two hours after the shooting, that Appellant had shot her son. She knew Appellant from the neighborhood and initialed the statement that she made to police around 2:45 a.m., wherein she stated that Appellant had come around the corner and started shooting. At trial, however, she claimed that she had been drinking excessively on the night of the incident, and testified that she could not identify Appellant as the shooter. The officer who interviewed the victim's mother, however, remarked that she was not intoxicated when he spoke with her.

The victim's former girlfriend, Tyesha Hasty, who had been involved in the altercation with Ms. Benyard, also provided police with a statement shortly after the shooting. She identified Appellant as the shooter and explained that he had been arguing with the victim's cousin, Michael Buckeholder, before the shooting. In addition, she informed police that Appellant and the victim had issues for a long period and that another of the victim's cousins, Michael's brother, had fired a shot at Appellant's cousin, resulting in the victim's aunt being attacked. During trial, Ms. Hasty

_____

[2] Ms. Benyard was not the registered owner of the car, a 1995 Nissan Maxima, but was in possession of the vehicle.

testified that she did not actually see the shooting because she was inside her home.

Another woman, Latoya Jenkins, the girlfriend of Michael Buckeholder, identified Appellant as the shooter shortly after the incident, though she claimed at trial that she was too intoxicated to see who fired the shots. Appellant acknowledged at trial having words first with Ms. Jenkins and then her boyfriend before the shooting. However, he claimed that he was with his girlfriend at his apartment at the time of the shooting and waiting on another woman to stop at his home to purchase marijuana.

At trial, the Commonwealth also introduced taped conversations between Appellant and another woman, while he was incarcerated, in which he asked her to dispose of a pair of shoes and marijuana. These conversations also revealed Appellant attempting to secure alibi witnesses and that he wanted to contact the eyewitnesses. The jury returned the aforementioned guilty verdicts and the court sentenced Appellant. Appellant filed a timely post-sentence motion, which the court denied. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for our review. Appellant presents two issues on appeal.

1. Is the evidence insufficient to prove that Appellant was the perpetrator of the crimes?

- 4 -

2. Did the trial court err in permitting the Commonwealth to ask the defendant questions regarding his arrest for selling narcotics on the 100 block of N. Edgewood Street?

Appellant's brief at 7.

We review the sufficiency of the evidence by considering the entire record and all of the evidence admitted at trial. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. **Id**. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. **Id**. The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Id**. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id**.

In the present case, the Commonwealth provided evidence from eyewitnesses to the shooting who identified Appellant as the shooter. Although these witnesses declined to identify Appellant at trial, their prior signed statements are sufficient to establish each element of attempted

murder and aggravated assault. The jury was free to reject the eyewitnesses' trial testimony as incredible and accept their previous statements. To the extent Appellant fails to develop any argument on the remaining convictions as to which elements of the crime the Commonwealth failed to establish, his position is waived. Accordingly, Appellant's initial claim is without merit.

Appellant's second claim is that the trial court erred in allowing the Commonwealth to introduce evidence that Appellant was previously convicted of possession with intent to deliver ("PWID") cocaine based on an incident that transpired on Edgewood Street. While we agree that the trial court erred in admitting this evidence, we conclude that the error was harmless. Prior *crimen falsi* convictions are admissible into evidence, however, PWID is not a *crimen falsi* crime. Further, evidence of prior bad acts may be admissible "to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." ***Commonwealth v. Brown***, 52 A.3d 320, 325 (Pa.Super. 2012); Pa.R.E. 404(b)(2). As we noted in ***Brown***, "[t]his list is non-exclusive." ***Brown***, ***supra*** at 325. For example, evidence of a bad act may be admissible to impeach a witness's credibility where the witness testifies that he does not have a criminal history, or where the defendant uses his prior history to intimidate or threaten a victim, or the bad act is part of the *res gestae*/natural history of the case. ***Id***. at 326. Of course, the probative

value of the bad acts evidence must outweigh its prejudicial impact. *Id*.; Pa.R.E. 403.

The Commonwealth argued at trial that because Appellant testified that he took care of his grandmother and other elderly people on the block in question, and admitted to selling marijuana, he opened the door to introduction of his PWID conviction. It added that since Appellant testified that he made money by planning parties, it should be permitted to impeach that testimony with evidence that he earned a living as a drug dealer. We disagree.[3] Indeed, none of the common law exceptions to the rule against bad acts or the list included in the relevant rule of evidence applies to this matter. Appellant's reference to his familiarity with the area did not open the door to introduction of the commission of a crime in the same neighborhood, nor was Appellant's testimony character evidence. Further, the PWID conviction does not establish motive, as the Commonwealth's theory was related to a differing neighborhood dispute.

Additionally, the PWID conviction could not establish identity, intent, preparation, plan, knowledge or absence of mistake where the defendant was charged with a wholly unrelated shooting incident unrelated to a drug crime. In this respect as well, the *res gestae* exception has no applicability.

---

[3] We note that the Commonwealth failed to timely file a brief in this matter. We do not consider its patently untimely brief. Accordingly, the Commonwealth has not provided a single case that is remotely analogous which would authorize the introduction of the evidence in question.

There also was no suggestion that Appellant used his PWID conviction to intimidate or threaten the victim. The introduction of Appellant's previous conviction was unnecessary and the Commonwealth's untenable argument below is not persuasive. Nonetheless, we hold for the following reasons that the error was harmless.

Our Supreme Court explained in **Commonwealth v. Allshouse**, 36 A.3d 163, 182 (Pa. 2012), that a court is permitted to affirm a judgment based on harmless error even if the parties do not raise that argument. **Id**. Harmless error exists if there is no reasonable possibility that the error could have contributed to the verdict. **Commonwealth v. Green**, 76 A.3d 575, 583 (Pa.Super. 2013). In this respect, an error is harmless if it

> did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

**Id**.

Appellant himself acknowledged as part of his testimony regarding an alibi that he sold marijuana. In addition, the jury was aware that Appellant sold marijuana because he was recorded while in jail telling a person to get rid of marijuana joints. Thus, the jury was already aware that Appellant sold drugs, although not cocaine. The Commonwealth also introduced evidence that Appellant, while incarcerated, solicited a person to dispose of a pair of

shoes that he owned which matched the description given by the victim. Although several eyewitness testified at trial that they were too intoxicated to identify Appellant, each witness, all of whom knew Appellant, had informed police shortly after the shooting that he was the culprit. Moreover, the reference to Appellant's conviction was relatively brief in the context of a five-day trial. Accordingly, we find the prejudice resulting from the reference to Appellant's PWID cocaine conviction was *de minimis*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2014