J-A15008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| FRANCIS D. LYNCH, | : | |
| Appellant | : | No. 870 EDA 2014 |

Appeal from the Judgment of Sentence January 8, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003106-2012

BEFORE:  BOWES, MUNDY, AND FITZGERALD* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 07, 2015**

Francis D. Lynch appeals from the judgment of sentence of six to twelve years incarceration imposed by the trial court after a jury found him guilty of homicide by vehicle, homicide by vehicle while driving under the influence ("DUI"), DUI—general impairment, and DUI—highest rate.[1]  We affirm.

Appellant, while making a left-hand turn into a driveway with his truck, struck and killed Barry Good, who was traveling in the opposite direction on his motorcycle.  Testing revealed that Appellant's blood alcohol content ("BAC") was .136%.  Testimony at trial established that Appellant consumed

---

[1] The trial court also adjudicated Appellant guilty of several summary traffic offenses.

*  Former Justice specially assigned to the Superior Court.

one full beer and a shot of Jagermeister as well as a partial beer at a private club, the Owl's Nest. He then traveled to another bar, the Hanover Inn, where he drank two more beers and two additional shots of Jagermeister. Appellant left the bar with his girlfriend to travel to a friend's home for a bonfire. In attempting to pull into a driveway that he believed belonged to his friend, Appellant struck and killed the victim.

Two friends traveling in a vehicle behind Appellant witnessed the accident. They described Appellant's driving as erratic. Appellant varied his speed, swerved in between the lanes of travel, and when making the turn did so not by turning in a ninety degree fashion, but by entering the opposite lane of travel and driving in that lane at an approximate forty-five degree angle in making the turn. After the crash, Appellant asked the owner of the driveway in which he had turned if he could relieve himself in the driveway. Appellant's speech was also slurred and he failed field sobriety tests.

The Commonwealth presented expert testimony from Dr. Edward Barbieri regarding the effects of alcohol on the human body. Dr. Barbieri testified that a person with a .BAC of .136% would be substantially impaired. In addition, the Commonwealth introduced expert testimony from Corporal Charles Burckhardt, an expert in accident reconstruction. According to Corporal Burckhardt, Appellant should have been able to see the victim

before Appellant turned left. He also opined that the victim was not speeding.

During the trial, Juror #10 alerted the trial court that Juror #5 had said that she purchased Jagermeister and consumed the drink. According to Juror #10, Juror #5 maintained that Appellant did not have a case. Upon learning of this information, the court queried Juror #5. Juror #5 admitted to purchasing Jagermeister to see if it was 70 proof, but denied drinking it. She also acknowledged telling members of the jury that she had made the purchase. However, she maintained that she did not make any additional comments and expressly denied stating that Appellant did not have a case.

At the conclusion of this questioning, the court then questioned Juror #10 on the record. Juror #10 indicated that Juror #11, Alternate Juror #2, and Juror #7 may have overheard Juror #5's reference to buying Jagermeister. The court asked Juror #10 if she could remain impartial despite hearing Juror #5's comments. Juror #10 indicated she could be fair and impartial. The court then questioned separately Juror #11, Alternate Juror #2, and Juror #7. Only Alternate Juror #2 indicated hearing anything regarding Jagermeister, but did not hear Juror #5 say that she drank it. Rather, Alternate Juror #2 acknowledged hearing Juror #5 joke about tasting that drink after the case.

Appellant then made a motion for a mistrial. The court denied that motion, but dismissed Juror #5. The court set forth that, based on her *voir*

*dire* of the remaining jurors, she believed they could remain fair. The court also provided a cautionary instruction and reminded the jury that it must reach its verdict based solely on the evidence presented in the courtroom. Appellant did not ask that Juror #10 be removed from the panel. Thereafter, the jury found Appellant guilty of the aforementioned offenses.

On January 8, 2014, the court sentenced Appellant to five to ten years incarceration on the homicide by vehicle-DUI count and a consecutive term of incarceration of one to two years for the homicide by vehicle charge. It imposed no further penalty on the remaining charges. The Commonwealth subsequently filed a timely post-sentence motion to modify the sentence to request that Appellant pay various costs of prosecution. The court granted that motion. This appeal ensued. Appellant raises the following issues for our consideration.

A. Whether the Commonwealth presented sufficient evidence to the jury to prove that Appellant's intoxication was the direct and substantial cause of death.

B. Whether the trial judge erred by not replacing Juror #10 with an alternate upon learning that Juror #5 orally indicated that she "didn't think the defense had much of a case" and that she purchased alcohol to investigate its alcohol percentage, which prejudiced the Appellant so that the jury could not render a fair and unbiased verdict.

C. Whether the trial judge erred by not providing a curative instruction to Juror #10 which prejudiced the Appellant so that the jury could not render a fair and unbiased verdict.

D. Whether the trial judge erred by not conducting *voir dire* to the entire jury panel regarding Juror #5's statements which

prejudiced the Appellant so that the jury could not render a fair and unbiased verdict.

E. Whether the trial judge erred by not providing a curative instruction to the entire jury panel to disregard Juror #5's statements which prejudiced the Appellant so that the jury could not render a fair and unbiased verdict.

F. Whether the trial judge erred by denying a motion for mistrial upon learning of Juror #5's misconduct which prejudiced the Appellant so that the jury could not render a fair and unbiased verdict.

Appellant's brief at 4.

Appellant's initial claim pertains to the sufficiency of the evidence. In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court

does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

Appellant argues that although he was DUI, his intoxication did not cause the accident. According to Appellant, he "performed a regular, normal turn with irregular and abnormal results." Appellant's brief at 19. Appellant highlights that none of the three bartenders who served him and testified indicated that he was intoxicated. He points out that the passenger in the vehicle traveling behind him at the time of the accident testified to slight swerving but that Appellant did not cross into the opposing lane of traffic. Additionally, Appellant challenges the testimony of the first officer to respond, who conducted field sobriety tests. He takes issue with the officer's conclusion that he appeared mentally impaired, despite the officer's observations being related to Appellant's physical appearance. Appellant then points to testimony from several of his own witnesses that he did not appear intoxicated or sound incoherent.

In addition, Appellant contests the expert testimony of Corporal Burckhardt. Appellant suggests that his driving was consistent with his own explanation that he was lost and looking for the driveway of his friend in a dark stretch of road. He asserts that it is significant that "Corporal Burckhardt's expert testimony never concludes that the turn was the proximate cause of the accident and was made illegally or incorrectly because of intoxication." Appellant's brief at 25.

The Commonwealth counters that Appellant has only preserved a sufficiency challenge to his homicide by vehicle while DUI conviction. It notes further that Appellant has only challenged the causation element of the crime. In this regard, the Commonwealth asserts that "[e]vidence of [Appellant's] speeding, failure to control his vehicle, the resulting collision, his physical instability, and drinking is sufficient to establish causation." Commonwealth's brief at 12.

The Commonwealth highlights that Appellant's BAC was .136% and that it provided expert testimony that Appellant's driving ability would be substantially impaired. It adds that there was testimony that immediately before the collision Appellant was driving erratically by varying his speed, turning his high beams on and off repeatedly, and drifting in his lane. In addition, Appellant was slurring his speech immediately after the crash. Furthermore, the Commonwealth presented expert testimony from a crash reconstructionist that indicated that based on the speed of the vehicles, Appellant should have seen the victim before turning into him.

We find that Appellant's sufficiency claim is utterly without merit. His argument hinges on us viewing the evidence in a light most favorable to him and giving him the benefit of the inferences. Here, the evidence is not so weak and inconclusive that the jury could not determine that Appellant's intoxication caused the traffic accident. Contrary to Appellant's apparent belief, one need not be falling over drunk in order to be impaired behind the

wheel. Appellant had a BAC of .136%. He made a left hand turn into a motorcycle that he should have been able to see as it approached, and his own driving before the incident involved swerving back and forth in his lane and varying his speed. Appellant's attacks on the expert testimony of multiple experts goes to the weight of the evidence and not its sufficiency. Appellant misapprehends the law governing sufficiency review. He is entitled to no relief.

Appellant's remaining claims involve the trial court's handling of Juror #5 and that juror's interaction with other jury members. Appellant presents his argument for issues B through F together. Accordingly, we address these claims together and find them meritless.

Appellant first asserts that the trial court erred in failing to replace Juror #10 after she reported that Juror #5 had told her that she had purchased one of the types of alcohol consumed by Appellant to see the alcohol content and did not believe that Appellant had a defense. However, Appellant did not seek Juror #10's removal. This claim is therefore waived. **See** Pa.R.A.P. 302(a). Moreover, that juror indicated that she was not influenced by Juror #5's statement and, in fact, was the one responsible for bringing Juror #5's improper behavior to the court's attention.

Appellant also submits that the court erred in not submitting a curative instruction to Juror #10; however, the court provided a cautionary instruction to the entire jury and Juror #10 was obviously aware that she

was not to consider outside information since she alerted the trial court of Juror #5's "investigation" in the first instance. Appellant's claim is devoid of merit.

Next, Appellant claims that the court erred in declining to *voir dire* the entire jury panel. The Commonwealth correctly points out that defense counsel expressly stated that there was no need to call each juror back and question them. Hence, Appellant's position is waived. Pa.R.A.P. 302(a). Similarly, Appellant's penultimate issue is waived. Appellant argues that the court erred in not providing a curative instruction to the entire jury to disregard Juror #5's statements. The court, however, did instruct the jury, after replacing Juror #5, that it was to only consider evidence introduced in the courtroom. Counsel did not object to this instruction.

Finally, Appellant contends that the court erred in denying his request for a mistrial based on Juror #5's actions. The grant or denial of a mistrial is within the discretion of the trial court. ***Commonwealth v. Pope***, 14 A.3d 139, 145 (Pa.Super. 2010). Accordingly, we review such a decision under an abuse of discretion standard. Only where the prejudicial event can reasonably be said to deprive the moving party of a fair and impartial trial should a mistrial be granted. ***Commonwealth v. Tharp***, 830 A.2d 519, 532 (Pa. 2003). In the instant case, the trial court removed the juror in question and conducted *voir dire* of those jurors who may have overheard Juror #5's statements. These jurors either indicated that they could be

impartial or set forth that they did not hear the offending statements. The court then reiterated to the jury that it was only to consider the evidence introduced. The court did not err in declining to grant a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015