J-A27008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CEDRIC YOUNG, | |
| Appellant | No. 1288 WDA 2013 |

Appeal from the Judgment of Sentence July 10, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000532-2012

BEFORE: BOWES, OLSON, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 19, 2015**

Cedric Young appeals from the judgment of sentence of five to ten years incarceration to be followed by five years probation after the court found him guilty of possession with intent to deliver ("PWID"), possession of a controlled substance, and conspiracy to commit PWID. Since Appellant was sentenced under mandatory minimum statutes that have been declared unconstitutionally void, we are constrained to vacate his judgment of sentence and remand for resentencing. We affirm in all other respects.

Monroeville Police and agents from the Office of the Attorney General were conducting an undercover narcotics operation at a Days Inn in Monroeville on December 12, 2011. That investigation was unrelated to Appellant. However, during the course of that operation, law enforcement observed suspicious activity involving two hotel rooms, Room 319 and Room

329.   Specifically, OAG agents Timothy Yesho and Ronald Sepic witnessed numerous incidents between 3:00 p.m. and 4:30 p.m. that were consistent with possible drug transactions.  Five of the occurrences happened between 3:13 p.m. and 3:20 p.m.  Two more instances happened between 4:15 and 4:30.  In each case, an individual would arrive on foot or in a vehicle and proceed to one of two rear stairwells.  One or two African American males would then exit Room 319 and meet the other person in the stairwell for thirty seconds to a minute.  The person who arrived at the Days Inn would then leave and the males would return to Room 319.  Police did not actually witness any transactions.  Another agent, Francis Speranza, also saw a male, later identified as Robert Smiley, exit Room 329 and walk to Room 319.  Smiley and another male entered one of the stairwells and met two individuals who had driven to the Days Inn.

During one of these suspected drug transactions, at approximately 3:15 p.m., Agent Sepic saw a Hyundai vehicle enter the parking lot.  There were three occupants in the vehicle.  A white male left the car and entered one of the stairwells.  An African American male exited Room 319 and entered the same stairwell.  The white male then returned to the car and the black male to the hotel room.  Agent Sepic provided Agent Speranza with a description and license number of the Hyundai.

Agent Speranza observed the car pull to the front of the Days Inn and park.  The driver of the car, a woman, exited the vehicle and opened a rear

door. The woman then injected the back seat passenger with a substance. Agent Speranza believed that the person had just used heroin and radioed Detective John Trukla of the Monroeville Police. Police then effectuated a traffic stop of the Hyundai and arrested the individuals. Police discovered twelve stamp bags of heroin, which were marked "Juliette," and also recovered a syringe and spoon.

Agent Speranza consulted with a deputy attorney general regarding procuring a search warrant for Rooms 319 and 329. The deputy attorney general agreed that probable cause existed and instructed the agent to secure the rooms if any individuals were observed leaving the rooms while the search warrant application was being prepared. Police secured room keys for Room 319 and 329. Shortly thereafter, Smiley was seen exiting Room 329. Officers detained him, and Agent Yesho, Detective Trukla, Agent Andrew Sakmar, and an additional Monroeville police officer went to secure Room 319. When they approached the hotel room door, they detected a strong marijuana odor coming from inside.

Agent Yesho knocked and announced twice, "Police." No one answered the door, but the officers could hear movement and muffled voices inside. Detective Trukla then used a pass key to open the door. The door was opened several inches, and a haze of smoke emanated from the room. The door could not be opened completely because the security latch was secured. Agent Yesho saw a person run from the door toward what turned

out to be the restroom. Detective Trukla forced the door open using his shoulder.

Upon entering the room, police encountered Appellant and three other individuals, Anthony Williams, Gerald Lee, and Darryl Nelson. Williams had run into the bathroom and was followed by Agent Yesho and Detective Trukla. Detective Trukla discovered fifty-six stamp backs of heroin in the toilet. Also inside the room, in plain view, were bricks of suspected heroin, plastic baggies, and cash on the beds, floor, and dressers. Thirty-seven stamp bags of heroin, marked "Juliette," and $119 were on Appellant's person. Police also recovered 257 stamps bags of heroin from Williams, who also possessed $1400. Nelson was found in possession of $567. Police also discovered $940 from a nightstand, $405 on a bed, $75 on another bed, and $1,200 in a cigar box. In addition, fifty stamp bags were found in a trash basket and 310 bags of heroin were located on a bed. Police did not find any syringes or other paraphernalia used to ingest heroin.

Marijuana blunts were in an ashtray, ten cellphones were in the room, and a loaded .45 caliber pistol was found under one of the mattresses. Lee's fingerprint was on that weapon. In Room 329, police also located a stolen loaded 9mm Glock pistol, two magazines for the weapon, a box of 9mm ammunition, and two boxes of .45 caliber ammunition.

The Commonwealth charged Appellant with two counts each of PWID heroin and possession of heroin, and one count each of receiving stolen

property and conspiracy to commit PWID. Appellant adopted a suppression motion filed by co-defendant Williams. The trial court conducted a suppression hearing on March 25, 2013, relative to Appellant, Williams, Lee, and Nelson. The court denied the suppression motion and Appellant waived his jury trial rights. The court conducted a bench trial. After granting Appellant's motion for judgment of acquittal on the receiving stolen property count, the court found Appellant guilty of one count each of PWID, possession of heroin, and conspiracy. On April 19, 2013, the Commonwealth informed Appellant that it intended to seek mandatory minimum sentences under 18 Pa.C.S. § 7508 and 42 Pa.C.S. § 9712.1.

The court conducted a sentencing hearing on July 10, 2013. It sentenced Appellant to a mandatory term of incarceration of five to ten years for PWID and a consecutive period of five years probation for conspiracy. The possession charge merged with the PWID count and therefore the court imposed no sentence on that charge. This timely appeal ensued. The trial court directed that Appellant file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for this Court's review.

Appellant presents two issues for our consideration.

A. Under Pennsylvania law, does the Commonwealth survive a sufficiency challenge to the charges of possession with intent to deliver narcotics and conspiracy to receiving stolen property

- 5 -

when the Appellant is merely present in a hotel room that is rented by one of multiple co-defendants where large amounts of drugs are found on the bed, a stolen gun is retrieved from under a mattress, a fingerprint to the gun is linked to the renter of the same room and the Appellant is only found to have a small amount of drugs and cash on his person that is consistent with personal use?

B. Under Pennsylvania and United States' law, did the trial court commit error by denying a pre-trial motion to suppress evidence seized from a warrantless search of a hotel room, when agents failed to articulate probable cause for a warrant, obtain a passkey from the hotel desk for a specific room, use the pass key on the room, break the latch on the door after the door would not open, seize evidence from a room then later attempt to get 'voluntary consent to search' from the renter while he is in handcuffs, plainly asserted his right to remain silent and [was] surrounded by agents?

Appellant's brief at 5.[1]

Appellant's initial claim pertains to the sufficiency of the evidence. In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. **Id**.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented."

_____

[1] In the argument portion of his brief, Appellant inverts the order in which he addresses his claims, arguing his suppression issue first. However, since a successful sufficiency challenge warrants discharge, we address that contention first.

- 6 -

*Id.* When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.*

Appellant argues that because he only possessed a small amount of cash and that the amount of heroin on his person was consistent with personal use, insufficient evidence was introduced to show that he committed both PWID and conspiracy to commit PWID. He continues by asserting that his mere presence at the crime scene is not sufficient to show a conspiracy. Appellant contends that the Commonwealth did not prove that he actually possessed the large amount of drugs in the room or the firearm and that it did not show that he constructively possessed the heroin not recovered on his person.

The Commonwealth relies on this Court's decision in ***Commonwealth v. Vargas***, 108 A.3d 858 (Pa.Super. 2014) (*en banc*), to counter Appellant's positions. In ***Vargas***,

> [defendant] was inside a hotel room with two other individuals while a third person remained outside in a Chevy Impala with a New Jersey license plate. The person in the Impala had indicated

to police that the owner of the car was in the [hotel] room where police located Appellant. Police secured a search warrant for the [hotel] room and found four bags of heroin on another individual who was in the hotel room with Appellant. Also, police observed a large Ziploc bag that ordinarily contains smaller Ziploc bags, which one officer described as being used almost exclusively for the packaging of narcotics. Rubber bands, frequently used in packaging drugs, were found floating in the toilet, which appeared to have been flushed just before police arrived. Drug sniffing dogs performed a sniff on the outside of both Appellant's car and the Impala, which belonged to Francisco Saldana, one of the men who was inside the hotel room with Appellant. The dog alerted on both cars. Police then obtained a search warrant for the vehicles. Inside Mr. Saldana's car, police found a bag containing over 370 grams of heroin and a loaded .40 caliber semi-automatic pistol. These items were located in a secret compartment in the vehicle. Part of the drugs found in Mr. Saldana's vehicle were packaged in balloon and condom-like wrappers. . . .

Inside the hotel room, an industrial-sized trash bag and large blue plastic containers were seized. The bag and containers as well as a trash can in the room contained numerous items used to package heroin, including rubber stamps, wax paper, digital scales, empty condom wrappers similar if not identical to those used to package the drugs in Mr. Saldana's car, thousands of one-inch-by-one-inch Ziploc bags, grinders, and lamps. The trash bag and plastic containers were on the floor of the [hotel] room and were not hidden. Six grinders and two scales tested positive for either cocaine or heroin residue. Additional packaging in the room tested positive for heroin residue. A surveillance video of Mr. Saldana entering the hotel room showed that he had arrived at the hotel shortly before the police and had entered the hotel room without any of the plastic containers or trash bag. No luggage or bags were located in Appellant's vehicle. Expert testimony was introduced that the materials recovered indicated a mobile heroin packaging mill.

*Vargas*, *supra* at 866 (internal citation omitted). The *Vargas* Court held

that the evidence was sufficient to establish PWID and conspiracy.

In the instant case, viewing the evidence in a light most favorable to the Commonwealth and thereby giving it the benefit of the reasonable inferences derived therefrom, the pertinent proof is sufficient to establish the aforementioned crimes. Only by setting aside our standard of review can this evidence be viewed as Appellant merely being present while others were packaging heroin for purposes of distribution.

Determining whether a person possessed a drug with an intent to deliver is based upon the totality of circumstances. **Commonwealth v. Ratsamy**, 934 A.2d 1233 (Pa. 2007). As it relates to conspiracy, we have outlined that:

> "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa.Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." **Id**. The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Id**.

**Commonwealth v. Feliciano**, 67 A.3d 19, 25-26 (Pa.Super. 2013) (*en banc*).

Here, Appellant not only possessed thirty-seven bags of heroin on his person, bags which were marked the same as those recovered from a

vehicle that had just left the Days Inn, but a vast quantity of stamp bags were also located inside the room. Appellant did not possess a syringe or spoon when arrested. Huge amounts of cash were inside the hotel room. Appellant's cohorts also possessed either drugs and money or large amounts of cash on their person. Stamp bags of heroin were inside both a toilet and trash can. This case is not close to being akin to a situation where the evidence is so weak and inconclusive that no probability of fact could be drawn therefrom. Appellant's sufficiency argument is entirely without merit.

We now consider Appellant's suppression issue, and in light of our recent decision in **Commonwealth v. Haynes**, 116 A.3d 640 (Pa.Super. 2015), find he is entitled to no relief.[2] Appellant contends that neither probable cause nor exigent circumstances existed in this matter. He asserts that Agent Yesho could not state with certainty that he saw drug transactions outside the hotel room, and used a key to enter without a warrant. Appellant contends that Agent Sepic did not witness a drug transaction, but simply observed individuals leave a stairwell. Further, Appellant maintains that even if a drug transaction did occur outside, it would not give rise to probable cause to search Appellant's room.

_____

[2] Appellant fails to meaningfully confront the **Haynes** decision in his brief and does not acknowledge its existence. We are aware that **Haynes** was decided after the suppression motion was filed in this matter. However, it was filed before the briefs in this case were submitted.

Additionally, Appellant submits that there were no exigent circumstances in this matter and that any exigency was created by the police.

The Commonwealth responds that both probable cause and exigent circumstances existed and that this case is controlled by *Haynes*, *supra*. As it relates to probable cause, the Commonwealth sets forth that "probable cause exists where there is a probability of criminal activity." Commonwealth's brief at 25 (quoting *Commonwealth v. Dukeman*, 917 A.2d 338, 341 (Pa.Super. 2007)). It posits that law enforcement personnel witnessed seven instances of unusual activity in which persons exited a room at the Days Inn and would meet in a stairwell with other persons who drove to the Days Inn. These meetings would last for approximately one minute before the individuals from the hotel would return to their room and those who had arrived would leave. It highlights that after one of these incidents, a person was observed injecting another individual with what was believed to be heroin. The Days Inn in question was noted as a high drug trafficking area and police stopped a vehicle after observing the suspected drug transactions. The individuals in that car possessed heroin.

With respect to exigent circumstances, the Commonwealth relies extensively on *Haynes*, *supra*. Therein, state police were conducting surveillance outside an apartment complex. Police observed what appeared to be drug sale activity and effectuated a traffic stop of a vehicle in which an occupant was believed to have purchased drugs. The driver of the car was

found with heroin and admitted to buying heroin from a woman at the apartment complex. A woman was seen leaving one of the buildings in the complex and meeting a series of persons in the parking lot and taking part in what appeared to be hand-to-hand drug transactions. This activity occurred on three occasions. Police followed the woman, but were unable to intercept her before she entered the apartment. Officers then knocked and asked to speak to the renter. Police heard rumbling inside, identified themselves as police, and asked for the door to be opened. No one responded, and after approximately thirty seconds, police forced entry. They found in plain view nine bricks of heroin, money, and burnt marijuana blunts. On appeal, Haynes alleged that the warrantless entry was unlawful and violated his Fourth Amendment and Article I, § 8 rights.

This Court undertook a lengthy discussion of the historical meaning and purpose of the constitutional warrant protections and the common law authority to conduct warrantless entry into a residence. We concluded that police therein did not act unconstitutionally by improperly creating their own exigency. *Haynes* is directly analogous to the present case. Here, similar to *Haynes*, police observed suspicious activity that they believed involved narcotics transactions. In each case, police stopped a vehicle in which occupants were suspected of engaging in the purchase of narcotics. That stop resulted in the recovery of heroin. Police here then approached a room where it was suspected that the drug dealers were operating and knocked

and announced their presence. In both **Haynes** and this case, the smell of marijuana was emanating from the room and those inside refused to open the door. Police then entered and found drugs and money in plain view. For reasons fully delineated in **Haynes**, Appellant's claim fails.

However, as in **Haynes**, Appellant was also sentenced to a mandatory minimum sentence. The statutory authority for that sentence has been declared to be unconstitutional in its entirety and to present a legality of sentence question. **See Haynes**, **supra** (discussing cases). Therefore, we are constrained to find that Appellant's sentence must be vacated.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2015