J-A27009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRYL MATTHEW NELSON, | |
| Appellant | No. 1391 WDA 2013 |

Appeal from the Judgment of Sentence July 10, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0000529-2012

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 19, 2015**

Darryl Matthew Nelson appeals from the aggregate judgment of sentence of five to ten years incarceration to be followed by five years probation after the court found him guilty of possession with intent to deliver ("PWID") heroin, possession of heroin, and conspiracy to commit PWID. After careful review, we affirm.

Monroeville Police and agents from the Office of the Attorney General were conducting an undercover narcotics operation at a Days Inn in Monroeville on December 12, 2011.  That investigation was unrelated to Appellant.  However, during the course of that operation, law enforcement observed suspicious activity involving two hotel rooms, Room 319 and Room 329.  Specifically, OAG agents Timothy Yesho and Ronald Sepic witnessed numerous incidents between 3:00 p.m. and 4:30 p.m. that were consistent

with possible drug transactions. Five of the occurrences happened between 3:13 p.m. and 3:20 p.m. Two more instances happened between 4:15 and 4:30. In each case, an individual would arrive on foot or in a vehicle and proceed to one of two rear stairwells. One or two African American males would then exit Room 319 and meet the other person in the stairwell for thirty seconds to a minute. The person who arrived at the Days Inn would then leave and the males would return to Room 319. Police did not actually witness any transactions. Another agent, Francis Speranza, also saw a male, later identified as Robert Smiley, exit Room 329, and walk to Room 319. Smiley and another African American male entered one of the stairwells and met two individuals who had driven to the Days Inn.

During one of these suspected drug transactions, at approximately 3:15 p.m., Agent Sepic saw a Hyundai vehicle enter the parking lot. There were three occupants in the vehicle. A white male left the car and entered one of the stairwells. An African American male exited Room 319 and entered the same stairwell. The white male then returned to the car and the other male to the hotel room. Agent Sepic provided Agent Speranza with a description and license number of the Hyundai.

Agent Speranza observed the car pull to the front of the Days Inn and park. The driver of the car, a woman, exited the vehicle and opened a rear door. The woman then injected the back seat passenger with a substance. Agent Speranza believed that the person had just used heroin and radioed

Detective John Trukla of the Monroeville Police. Police then effectuated a traffic stop of the Hyundai and arrested the individuals. Police discovered twelve stamp bags of heroin, marked "Juliette," and also recovered a syringe and spoon.

Agent Speranza consulted with a deputy attorney general regarding procuring a search warrant for Room 319 and 329. The deputy attorney general agreed that probable cause existed and instructed the agent to secure the rooms if any individuals were observed leaving the rooms while the search warrant application was being prepared. Police secured room keys for Room 319 and 329. Shortly thereafter, Smiley was seen exiting Room 329. Officers detained him and Agent Yesho, Detective Trukla, Agent Andrew Sakmar, and an additional Monroeville police officer went to secure Room 319. When they approached the hotel room door, they detected a strong marijuana odor coming from inside.

Agent Yesho knocked and announced twice, "Police." No one answered the door, but the officers could hear movement and muffled voices inside. Detective Trukla then used a pass key to open the door. The door was opened several inches, and a haze of smoke emanated from the room. The door could not be opened completely because the security latch had been secured. Agent Yesho saw a person run from the door toward what turned out to be the restroom. Detective Trukla forced the door open using his shoulder.

Upon entering the room, police encountered Appellant and three other individuals, Anthony Williams, Gerald Lee, and Cedric Young. Williams had run into the bathroom and was followed by Agent Yesho and Detective Trukla. Detective Trukla discovered fifty-six stamp backs of heroin in the toilet. Also inside the room, in plain view, were bricks of suspected heroin, plastic baggies, and cash on the beds, floor, and dressers. Thirty-seven stamp bags of heroin, marked "Juliette", and $119 were on Young's person. Police also recovered 257 stamps bags of heroin from Williams, who also possessed $1,400. Appellant was found in possession of $567. Police also discovered $940 from a nightstand, $405 on a bed, $75 on another bed, and $1,200 in a cigar box. In addition, fifty stamp bags were found in a trash basket and 310 bags of heroin were located on a bed. Police did not find any syringes or other paraphernalia used to ingest heroin.

Marijuana blunts were in an ashtray, ten cellphones were in the room, and a loaded .45 caliber pistol was found under one of the mattresses. Lee's fingerprint was on that weapon. In Room 329, police also located a loaded 9mm Glock pistol, two magazines for the weapon, a box of 9mm ammunition and two boxes of .45 caliber ammunition.

The Commonwealth charged Appellant with two counts each of PWID heroin and possession of heroin, and one count each of receiving stolen property and conspiracy to commit PWID. Appellant adopted a suppression motion filed by co-defendant Williams. The trial court conducted a

suppression hearing on March 25, 2013, relative to Appellant, Williams, Lee, and Young. The court denied the suppression motion and Appellant waived his jury trial rights. A bench trial ensued. After granting Appellant's motion for judgment of acquittal relevant to the receiving stolen property count, the court found Appellant guilty of one count each of PWID, possession of heroin, and conspiracy.

The court conducted a sentencing hearing on July 10, 2013. It sentenced Appellant to a term of incarceration of three to six years to be followed by a consecutive period of five years probation for PWID and a consecutive sentence of two to four years imprisonment for the conspiracy charge. The possession charge merged with the PWID count and therefore the court imposed no sentence on that charge. This timely appeal ensued. The trial court directed that Appellant file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for this Court's review. Appellant raises three issues for our consideration.

    I.    Did the trial court err in denying Mr. Nelson's motion to suppress evidence that was the product of a warrantless search, which was not justified under any recognized exception to the warrant requirement?

    II.    Was the evidence sufficient to support Mr. Nelson's convictions for possession of a controlled substance and possession of a controlled substance with intent to deliver where the Commonwealth merely established that Mr.

> Nelson was present in a hotel room where drugs were found?
>
> III. Was the evidence sufficient to support Mr. Nelson's conviction for conspiracy to commit the crime of possession of a controlled substance with intent to deliver where the Commonwealth merely established that Mr. Nelson was present in a hotel room where drugs were found?

Appellant's brief at 6.

Appellant's second and third issues pertain to the sufficiency of the evidence. Since sufficiency claims warrant discharge rather than retrial, we address those claims at the outset. In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. ***Id***.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. ***Id***. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. ***Id***. This Court

does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id.***

Determining whether a person possessed a drug with an intent to deliver is based upon the totality of circumstances. ***Commonwealth v. Ratsamy***, 934 A.2d 1233 (Pa. 2007). Necessarily, if a person possesses narcotics with intent to deliver, he or she is guilty of possession. As it relates to conspiracy, we have outlined that

> "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Devine***, 26 A.3d 1139, 1147 (Pa.Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Id.*** The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Id.***

***Commonwealth v. Feliciano***, 67 A.3d 19, 25-26 (Pa.Super. 2013) (*en banc*).

Appellant argues that the evidence in this case is insufficient to establish more than mere presence and possession of money. He contrasts his case with our recent decision in ***Commonwealth v. Vargas***, 108 A.3d 858 (Pa.Super. 2014) (*en banc*). In ***Vargas***,

[defendant] was inside a hotel room with two other individuals while a third person remained outside in a Chevy Impala with a New Jersey license plate. The person in the Impala had indicated to police that the owner of the car was in the [hotel] room where police located Appellant. Police secured a search warrant for the [hotel] room and found four bags of heroin on another individual who was in the hotel room with Appellant. Also, police observed a large Ziploc bag that ordinarily contains smaller Ziploc bags, which one officer described as being used almost exclusively for the packaging of narcotics. Rubber bands, frequently used in packaging drugs, were found floating in the toilet, which appeared to have been flushed just before police arrived. Drug sniffing dogs performed a sniff on the outside of both Appellant's car and the Impala, which belonged to Francisco Saldana, one of the men who was inside the hotel room with Appellant. The dog alerted on both cars. Police then obtained a search warrant for the vehicles. Inside Mr. Saldana's car, police found a bag containing over 370 grams of heroin and a loaded .40 caliber semi-automatic pistol. These items were located in a secret compartment in the vehicle. Part of the drugs found in Mr. Saldana's vehicle were packaged in balloon and condom-like wrappers. . . .

Inside the hotel room, an industrial-sized trash bag and large blue plastic containers were seized. The bag and containers as well as a trash can in the room contained numerous items used to package heroin, including rubber stamps, wax paper, digital scales, empty condom wrappers similar if not identical to those used to package the drugs in Mr. Saldana's car, thousands of one-inch-by-one-inch Ziploc bags, grinders, and lamps. The trash bag and plastic containers were on the floor of the [hotel] room and were not hidden. Six grinders and two scales tested positive for either cocaine or heroin residue. Additional packaging in the room tested positive for heroin residue. A surveillance video of Mr. Saldana entering the hotel room showed that he had arrived at the hotel shortly before the police and had entered the hotel room without any of the plastic containers or trash bag. No luggage or bags were located in Appellant's vehicle. Expert testimony was introduced that the materials recovered indicated a mobile heroin packaging mill.

*Vargas*, *supra* at 866 (internal citation omitted). The *Vargas* Court found the evidence sufficient for both PWID and conspiracy.

Appellant maintains that, although drugs, cash, and a significant amount of baggies used for packaging heroin were found either in the room or on persons present inside the room, the "hotel room in this case was not filled with the vast quantity of drug paraphernalia found in *Vargas*." Appellant's brief at 29. In addition, Appellant contends that there was more compelling evidence in *Vargas* that the occupants of the room were attempting to destroy evidence.

According to Appellant, this case is more akin to *Commonwealth v. Ocasio*, 619 A.2d 352 (Pa.Super. 1993), which the *Vargas* Court distinguished. In *Ocasio*, the defendant lived at a house where police found a large amount of cocaine, packaging materials, and the defendant had $422 in cash on his person. Therein, police were executing a search warrant at the home when Ocasio returned home. The home contained multiple bedrooms and Ocasio was not the only resident. In the kitchen trashcan, police discovered 567 vials of cocaine. They also recovered a large chunk of cocaine and close to $6,000 in a third floor bedroom. In the basement, police found a scale, a bag containing empty plastic vials, and another baggie containing multiple empty clear packets. Police also recovered a plastic grinder commonly used for diluting cocaine. This Court found the evidence in *Ocasio* insufficient to convict him of PWID and conspiracy.

We find this case is more analogous to **Vargas**. Unlike **Ocasio**, this matter did not involve the defendant arriving at his home. Here, Appellant was already inside a hotel room with numerous other individuals when police arrived. The Court in **Ocasio** noted that the Commonwealth needed to establish a nexus between the rooms were the drugs were kept and the defendant or that he participated in the drug activity. In this case, Appellant was directly connected to the room where the drugs were stored. Not only were those drugs in plain view, but packaging material and money were also clearly evident. Further, police had the room under surveillance for an extended period. There is no indication that Appellant recently arrived inside the room. Moreover, our standard of review requires us to give the Commonwealth all reasonable inferences from the evidence. Aside from the narcotics located in the room and on other individuals present, those inside the room had also attempted to discard drugs in the bathroom, just as in **Vargas**. Appellant's contention that it is possible that he arrived to play video games and that others were engaged in the drug business ignores our standard of review. The evidence is sufficient to establish PWID, possession of heroin, and conspiracy. **See Vargas**, **supra**; **see also Feliciano**, **supra**. Appellant is entitled to no relief.

Having addressed Appellant's sufficiency claims, we now consider his suppression issue and find that our recent decision in **Commonwealth v. Haynes**, 116 A.3d 640 (Pa.Super. 2015), controls. Therein, state police

were conducting surveillance outside an apartment complex. Police observed what appeared to be drug sale activity and effectuated a traffic stop of a vehicle in which an occupant was believed to have purchased drugs. The driver of the car was found with heroin and admitted to buying heroin from a woman at the apartment complex. A woman was seen leaving one of the buildings in the complex and meeting a series of persons in the parking lot and taking part in what appeared to be hand-to-hand drug transactions. This activity occurred on three occasions. Police followed the woman, but were unable to intercept her before she entered the apartment. Officers then knocked and asked to speak to the renter. Police heard rumbling inside, identified themselves as police, and asked for the door to be opened. No one responded, and after approximately thirty seconds, police forced entry. They found in plain view nine bricks of heroin, money, and burnt marijuana blunts. On appeal, Haynes alleged that the warrantless entry was unlawful and violated his Fourth Amendment and Article I, § 8 rights.

This Court undertook a lengthy discussion of the historical meaning and purpose of the constitutional warrant protections and the common law authority to conduct warrantless entry into a residence. We concluded that police therein did not act unconstitutionally and improperly create their own exigency. *Haynes* is directly analogous to the present case. Here, similar to *Haynes*, police observed suspicious activity that they believed involved

narcotics transactions. In each case, police stopped a vehicle in which occupants were suspected of engaging in the purchase of narcotics. That stop resulted in the recovery of heroin. Police then approached a room where it was suspected that the drug dealers were operating and knocked and announced their presence. In both **Haynes** and this case, the smell of marijuana was emanating from the room and those inside refused to open the door. Police thereafter entered and found drugs and money in plain view. For reasons fully delineated in **Haynes**, Appellant's claim that police lacked exigent circumstances fails.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2015