**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUSTIN LAMONT THOMPSON, | |
| Appellant | No. 534 MDA 2015 |

Appeal from the Judgment of Sentence February 24, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):
CP-21-CR-0003532-2011

BEFORE:  BOWES, LAZARUS AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 01, 2016**

Justin Lamont Thompson appeals from the judgment of sentence of 200 to 480 months incarceration, which was imposed following his conviction of third-degree murder, aggravated assault, endangering the welfare of children, and recklessly endangering another person ("REAP").  We affirm.

The facts as gleaned from the trial transcript are as follows.  At 7:21 a.m. on September 1, 2011, Appellant dialed 911 and reported to the dispatcher that his infant daughter was not breathing.  Paramedics were dispatched to Appellant's South Middleton Township home, where they immediately initiated life-saving emergency treatment and transported the infant.  Despite their efforts, the infant had no pulse and was incapable of

---

* Retired Senior Judge assigned to the Superior Court.

breathing on her own when they arrived at the hospital. The five-week-old infant was pronounced dead at 8:04 a.m.

The attending physician, Katarzyna Ferraro, M.D., noted the infant had bruises around both eyes and that the soft spot on the baby's head was distended and firm, which suggested swelling of the brain. Hemorrhaging of the retinas of the eyes was consistent with significant head trauma.

Pennsylvania State Police Corporal Bryan Henneman conducted a recorded interview of Appellant at the hospital that morning. According to Appellant, the infant went to sleep around midnight, but awoke around 3 a.m. Appellant told the trooper that he did not notice anything unusual about the baby. After a bottle and a diaper change, the infant went back to sleep. At 7:00 a.m., when his older daughter woke him up, Appellant said he noticed the baby was not breathing.

An autopsy revealed bruising to the left side of the scalp and bleeding beneath the parietal bones, bruises to the back and buttocks, bleeding around the brain and into the retina and optic nerves, bleeding around the covering of the spinal cord, and injury or tearing of the wiring of the brain. N.T., Jury Trial Vol. IV, 2/5/15, at 66-67. The infant sustained blunt force trauma injuries either from her head striking something, something striking the head, or a violent motion applied to her head such as shaking. *Id*. at 74-75.

Upon receipt of the autopsy results, State Police interviewed Appellant a second time at the barracks. Initially, Appellant repeated his denial that anything strange or unusual had occurred. After being confronted with evidence from the autopsy that the baby was shaken to death while in his care, Appellant broke down and admitted that he shook the baby "maybe one time" for "maybe three to five seconds." N.T. Jury Trial Vol. III, 2/4/15, at 25. He acknowledged that it "hurt" knowing that it was his fault. *Id*. Appellant penned a letter admitting that he shook the baby and apologizing for causing her injury and death. The letter was read at trial to the jury.

At trial, Dr. Ferraro opined that forceful shaking of the infant for three to five seconds could have caused these injuries. Dr. Daniel Brown, a board-certified neuropathologist, testified that the diffuse axonal injury and spinal cord injury occurred at either 3:00 a.m. or 7:00 a.m., and that this case was one of the most severe that he had seen. N.T. Jury Trial Vol. IV, 2/5/15, at 40. He opined that such injuries would not occur with normal care and handling of an infant.

Dr. Samuel Land, a board-certified forensic pathologist, testified that all of the injuries, except the bruise on the side of the infant's head, could have been caused by violent shaking. The bruise was consistent with the side of the head striking something soft, like the bed. He opined further that, it was "highly unlikely, nearly impossible" that the infant could have caused the injuries to herself, and there was no evidence of underlying

- 3 -

disease.  *Id*. at 76.  He concluded the manner of death was blunt force trauma to the head and the manner of death was homicide.  *Id*. at 79.

The infant's mother, Camillah Johnson, testified that, when the child was born, she and Appellant watched a video at the hospital on shaken baby syndrome.  They signed a paper confirming that they had viewed the required video and the certification was admitted into evidence.  The Commonwealth was permitted to show the video to the jury over the defense's objection that it was irrelevant.  Six black and white closely-cropped autopsy photographs that were utilized by the medical experts to explain the infant's injuries were also admitted over a defense objection that they were "unduly inflammatory."  N.T. Jury Trial Vol. IV, 2/5/15, at 5.

Appellant testified at trial and denied shaking the baby.  He maintained that he fell while holding the baby after tripping on the tubing that connected him to his dialysis machine.  He specifically recollected that the only lamp in the room fell and no longer worked thereafter, a claim that the Commonwealth undermined on cross-examination when it showed Appellant a photograph depicting the working light.  Appellant told the jury that he wrote the apology as it was his fault that he tripped and fell with the baby, not that he shook her.  The Commonwealth utilized his prior inconsistent statement to impeach his testimony.

The jury returned a guilty verdict on the aforementioned charges. Following sentencing, Appellant appealed to this Court.  He complied with

the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court authored its opinion. Appellant presents three issues for our review:

I. Was the evidence sufficient to ensure a conviction beyond a reasonable doubt if one were to preclude the highly inflammatory and prejudicial evidence introduced by the Commonwealth?

II. Did the court err when it admitted into evidence a video on the dangers of shaking a baby to the jury?

III. Did the court err when it admitted into evidence graphic autopsy photographs of the decedent and showed those photographs to the jury?

Appellant's brief at 7.

Appellant alleges first that the evidence was insufficient to sustain the convictions. In reviewing a challenge to the sufficiency of the evidence, we examine the entire record and view the evidence and all reasonable inferences derived therefrom in a light most favorable to the Commonwealth as the verdict winner. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). The Commonwealth's burden may be established by circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn. **Commonwealth v. Olsen**, 82 A.3d 1041, 1050 (Pa.Super. 2013). Where the issue involves a question of law, "our standard of review is *de novo* and

our scope of review is plenary." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*).

We note preliminarily that Appellant's statement of the first issue reveals a misunderstanding of our scope and standard of review. In reviewing a sufficiency claim, we examine all of the evidence admitted, even improperly admitted evidence. ***Watley***, ***supra*** at 113. We do not review a diminished record in evaluating a challenge to the sufficiency of the evidence claim. ***See Commonwealth v. Palmer***, 751 A.2d 223, 227 (Pa.Super. 2000) (holding that "we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings were correct.").

In support of his claim, Appellant argues that while Dr. Ferraro admitted on the stand that shaking of the baby was a possible cause of the decedent's injuries and death, she also stated that there were other possibilities for the source of the injuries. N.T. Jury Trial, Vol. III, 2/4/15, at 44. Appellant contends that, since the evidence cannot conclusively point to cause of the injuries, the evidence is legally insufficient.

The Commonwealth counters that Appellant's sufficiency claim is waived twice over: once for failure to develop his arguments; once due to his failure to identify which element of the charges was not proven. It points out that Appellant's entire argument consists of two paragraphs, the first of which is the standard of review and the other an argument misrepresenting

Dr. Ferraro's testimony. The Commonwealth contends that Appellant failed to develop his argument or cite to any authorities to support it as required by Pa.R.A.P. 2119(a). *See also Commonwealth v. Walter*, 966 A.2d 560 (Pa. 2009). Nor did he identify in his Rule 1925(b) statement or in his brief what elements of the offenses were not proven as required in a sufficiency challenge. *Commonwealth v. Gibbs*, 981 A.2d 274 (Pa.Super. 2009) (Rule 1925(b) statement must specify what elements were insufficiently proven in order to preserve a sufficiency issue for appeal).

Assuming that Appellant is challenging the mechanism of the baby's fatal injury, the Commonwealth contends that the evidence is more than sufficient to support Appellant's third-degree murder conviction. Appellant was the only adult in the home during the relevant time and solely responsible for the infant's care. The fatal injuries occurred on his watch. The record contained substantial evidence that the infant sustained blunt force trauma to the head and that this was the cause of her death. Dr. Ferraro testified that the injuries were consistent with a forceful shaking. Both Dr. Land and Dr. Brown agreed. Dr. Brown also testified that the injury could have been caused by the child being thrown and striking a hard object. In any event, the injuries were consistent with significant trauma.

Appellant's characterization of Dr. Ferraro's testimony is misleading and inaccurate. Furthermore, our review of the record confirms that both Dr. Land and Dr. Brown testified that the autopsy results were consistent

with a shaken baby and significant trauma. The infant sustained whiplash-like injuries, the stems of her eyes were torn from her skull, and the CT scan revealed severe brain swelling and hemorrhaging. Appellant admitted that he shook his infant daughter and expressed remorse that his shaking caused her death. This admission, coupled with evidence that Appellant was informed of the dangers of shaking an infant, is sufficient to supply evidence of the state of mind necessary to support a third-degree murder conviction. Viewing the evidence in the light most favorable to the Commonwealth, as we must, the jury had more than enough evidence to convict Appellant of third-degree murder and the other charges.

Appellant's second and third issues are challenges to the trial court's evidentiary rulings. Initially, we observe, "It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." *Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Davido*, 106 A.3d 611, 645 (Pa. 2014). Additionally, if

the error is harmless, a new trial is not required. *Commonwealth v. Romero*, 938 A.2d 362 (Pa. 2007).[1]

First, Appellant alleges that the trial court erred in permitting the Commonwealth to play the videotape about shaken baby syndrome that Appellant viewed in the hospital when his infant daughter was born. He argues that, since the decedent's mother testified that she and Appellant saw the videotape and the form acknowledging same was admitted into evidence, the video was irrelevant. He objected at trial solely on the basis of relevance, and on appeal cites *Commonwealth v. Spiewak*, 617 A.2d 696, 699 (Pa. 1992), for the proposition that "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact more or less probable, or supports a reasonable inference of presumption regarding the existence of a material fact." Appellant argues in the alternative, that such evidence, if relevant, was unduly prejudicial and would tend to suggest

_____

[1] In *Commonwealth v. Foy*, 612 A.2d 1349 (Pa. 1992), our Supreme Court held that, "Error is considered to be harmless where: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."

a verdict upon an improper basis. *See* Pa.R.E. 403; *Commonwealth v. Owens*, 929 A.2d 1187 (Pa.Super. 2007).

The Commonwealth again argues waiver based upon Appellant's failure to develop his arguments in his brief. In the alternative, the Commonwealth contends the issue is meritless as the videotape "unequivocally showed the defendant was aware of the risks of shaking a baby," an issue relevant to all of the charges. Commonwealth's brief at 22. Such proof was relevant to show that Appellant acted with the state of mind necessary for third-degree murder, *i.e.*, that he acted with malice but without the specific intent to kill. It was also probative as it tended to show that he acted knowingly or recklessly for purposes of aggravated assault, the knowing element of endangering the welfare, and the reckless element of REAP.

We reject the Commonwealth's waiver argument but agree that the videotape was highly probative. As we reiterated in *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa.Super. 2011), murder in the third degree is an unlawful killing with malice but without the specific intent to kill. *See* 18 Pa.C.S. § 2502(c). Malice is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured" and may be inferred from the totality of the circumstances. *Dunphy*, *supra* at 1220.

Unless the jury viewed the videotape, it could not determine what Appellant was told and thus knew about the dangers of shaking a baby. The video was highly probative of Appellant's knowledge and state of mind when he shook the child. We note further that Appellant did not object at trial that the videotape was more prejudicial than probative, and thus inadmissible. Hence, that argument is not preserved for appellate review. Nonetheless, we find the argument unavailing. There is nothing to suggest that the informational and instructional video was inflammatory or that it unfairly prejudiced the jury against Appellant. We find no abuse of discretion on the part of the trial court in admitting this highly probative evidence.

Finally, Appellant contends that the trial court abused its discretion in admitting six black and white autopsy photographs used by the Commonwealth's expert to illustrate the infant's injuries. He relies upon Pa.R.E. 403[2] in support of his contention that photographs illustrating the "infant's brain with blood pooling would inflame any reasonable person beyond the point of considering the law." Appellant's brief at 18.

_____

[2] Pa.R.E. 403, entitled "Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons" provides:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The Commonwealth counters that the court minimized any unfair prejudice by permitting it to use only six photographs and requiring that they be converted to black and white and closely cropped to depict only the injuries. Furthermore, such photographs were not cumulative merely because the medical experts testified to the nature of the injuries. *See Commonwealth v. Woodard*, 2015 Pa. LEXIS 2786 (Pa. 2015) (citing *Commonwealth v. Watkins*, 108 A.3d 692 (Pa. 2014). The photographs were demonstrative evidence of the injuries testified to by the Commonwealth's medical experts.

Our High Court held in *Commonwealth v. Murray*, 83 A.3d 137, 156 (Pa. 2013), that when the Commonwealth proffers photographs of a homicide victim, the trial court must engage in a two-part analysis. First, the trial court must examine whether the particular photograph is inflammatory. If it is not, it is admissible if relevant and of assistance to the jury. *Id*. If the photograph is inflammatory, the trial court must weigh its evidentiary value against the likelihood that it will inflame a jury's passions.

In *Woodard*, *supra*, our High Court found no abuse of discretion in the admission of color autopsy photographs of a child, which were utilized by a forensic pathologist at trial, to explain the fatal injuries. The Court found the photographs essential in proving the requisite intent for first-degree murder as they tended to refute the defense theory that the injuries resulted from an accidental fall. Furthermore, it rejected the claim that the

photographs were cumulative of the pathologist's testimony describing the injuries.

Herein, the trial court examined the photographs and rejected those it found too gruesome. Six photographs depicting the injuries were converted to black and white before they were shown to the jury. The photographs also were cropped to remove any indication that the brain or other body part depicted belonged to an infant. The trial court made the images "sanitary" before permitting their use.

The trial court herein effectively eliminated the risk of unfair prejudice by requiring the cropping of the photographs and their conversion to black and white. We have viewed the photographs and do not find them inflammatory. Furthermore, as in **Woodard**, **supra**, the photographs were essential in proving that the infant's death was a homicide rather than an accident. Moreover, they were not cumulative of expert testimony as "[p]hotographic evidence of the victim's injuries is not rendered duplicative merely because a medical examiner or other comparable expert witness has conveyed to the jury, in appropriate clinical language, the nature of the victim's injuries and the cause of death." **Commonwealth v. Pruitt**, 951 A.2d 307, 319 (Pa. 2008). We find no abuse of discretion in the admission of the photographs.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/1/2016</u>