J-S18014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GABRIEL ALFONZA CARSON-RIVERA, | |
| Appellant | No. 971 MDA 2015 |

Appeal from the Judgment of Sentence January 9, 2013
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):
CP-28-CR-0002084-2011
CP-28-CR-0002087-2011

BEFORE:  BOWES, LAZARUS AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 01, 2016**

Gabriel Alfonza Carson-Rivera appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of ten to twenty years imprisonment that was imposed after a jury convicted him at two related criminal action numbers of two counts of conspiracy to commit robbery, and one count each of robbery (serious bodily injury), attempted robbery, and conspiracy to commit theft.  We reject Appellant's challenge to the sufficiency of the evidence supporting his convictions, but remand for resentencing.

Appellant was charged at two separate criminal action numbers in connection with the October 30, 2011 robbery of the Super 8 Motel in

_____
* Retired Senior Judge assigned to the Superior Court.

Chambersburg, Pennsylvania, and the October 31, 2011 attempted robbery of the Kenmar Motel in Newburg, Pennsylvania. During the jury trial, the Commonwealth presented several witnesses that described the two criminal episodes, the vehicle used in the crimes, and Appellant's and his co-conspirator's statements following their apprehension. As pertinent to the claims asserted herein, the witnesses testified as follows.

Ankit Patel stated that he was working at the front desk of the Super 8 Motel in Chambersburg at approximately 7:00 p.m. on October 30, 2011. An assailant, Appellant's co-conspirator Colin Rea,[1] ran into the motel lobby, approached the desk, brandished a small firearm, tossed a plastic shopping bag at Mr. Patel, and demanded, "give me the money." N.T., 11/19/12, at 24-25. Rea, a white male who is approximately six feet tall, wore a Halloween mask over his face. *Id*. at 24-25. With the handgun leveled at his chest, Mr. Patel handed Rea approximately $280. *Id* at 26. Rea took the money, and as he turned to leave the motel he revealed the firearm to be fake. *Id*. The witness explained, that before Rea left, "he shot the gun and at that time I feel it's . . . [a] toy gun." *Id*. After the robbery, Mr. Patel locked the doors to the motel lobby and called the police. *Id*. at 27. He did not see the direction of Rea's flight. *Id*. at 28.

_____

[1] The notes of testimony identify the co-conspirator as Colin Ray; however, on April 24, 2013, the trial court entered an order confirming that the correct spelling of the co-conspirator's surname is Rea.

Peggy Crouse, the victim in the attempted robbery of the Kenmar Motel, presented the following testimony. On October 31, 2011, she was working alone at the fifteen-room-motel, which she owns with her husband, Roy. The motel's office is connected to the Crouse's residence. The office is separated from the couple's kitchen by a Dutch door, *i.e.*, a door divided horizontally so that the bottom half may remain shut while the top half opens. An alarm system emits an audible tone in the home to alert her when the front door to the motel office is opened.

At approximately 4:30 p.m., an individual, whom she identified at trial as Appellant, entered the motel office, inquired about room rates, and then left. During that exchange, Roy arrived home from work and walked passed Appellant to enter the residence. Roy recognized Appellant as a former athlete at Chambersburg High School. Since the motel's room rates are dependent upon the number of occupants, Roy informed his wife that there was another male sitting in the car outside.

Approximately thirty to forty-five minutes later, Appellant returned and inquired about the estimated cost for him and his girlfriend to stay at the motel for one week. After getting that information, Appellant left and indicated that he would return. Roughly ten minutes later, while Ms. Crouse was in the residence, the alarm signaled that someone had opened the front door. When Ms. Crouse entered the office, she was accosted by Rea who was brandishing a gun. Although the assailant wore a ski mask, she could

discern that he was white. Initially, Ms. Crouse assumed that the interaction was a Halloween prank; however, when he demanded, "[G]ive me your f**king money," she began to fear for her safety. N.T., 11/19/12, at 57. Alerted by the assailant's menacing command, Roy appeared at the Dutch door and scared the attacker away by making a shooting gesture and shouting "get out of here." *Id*.

Roy Crouse's testimony was consistent with his wife's. He added that, when he arrived from work, he observed a dark green car near the road at the end of the motel parking lot farthest away from the office. The vehicle, which Mr. Crouse identified at trial in a photographic exhibit, was positioned perpendicular to the designated parking spaces. It had substantial damage to the rear and a trunk that would not close. He noted that a white male was crouched in the front passenger seat. Simultaneous to these observations, Mr. Crouse watched an individual, whom he subsequently identified as Appellant, enter the motel office. Mr. Crouse also recounted his brief interaction with Appellant in the motel office. He stated that he immediately recognized Appellant "as someone [he] should know" but did not place him as an area athlete until after Appellant left the office with the information that he had requested. *Id*. at 68.

In relation to Rea's subsequent robbery attempt, Mr. Crouse explained that when he heard Rea angrily demand, "give me your f**cking money, now," he peered around the Dutch door to see Rea leveling his weapon at

Ms. Crouse. *Id*. at 70, 71-72. A sportsman, Mr. Crouse realized that Mr. Rea's firearm was most likely a BB gun. Hence, he elected to forego his own loaded shotgun that was sitting nearby and simply reached across the threshold of the Dutch door, made a pointing motion with his hands, and shouted, "You!" *Id*. at 71-72. Rea fled. Mr. Crouse grabbed the loaded shotgun and initiated pursuit; however, he terminated the chase because his neighbor's children were playing nearby. Mr. Crouse did not observe the direction of Rea's flight, but he discerned that the dark vehicle that he had noticed earlier was no longer parked outside the motel.

Chambersburg Borough Police Officer Matthew Lynch testified that, while on patrol on October 31, 2011, he received a police flash alerting him to "be on the lookout" for Colin Rea, described as a white male with blue hair. Rea along with another man, who was later determined to be Appellant, were suspected of robbing the Kenmar Motel and fleeing in a dark green car with a heavily damaged rear end. *Id*. at 84-85. Following the report, Officer Lynch observed the suspected vehicle traveling on Cedar Street in Chambersburg.

Officer Lynch was familiar with Rea because he had stopped Rea in the damaged vehicle on a prior occasion. Hence, he expected to see Rea operating the vehicle on that date. However, when he initiated the traffic stop, Appellant, whom he also recognized, was driving the car. Rea was

apprehended at a nearby hotel, and State Police took the pair to the State Police Barracks in Chambersburg and impounded Rea's automobile.

State Police Troopers Franklin M. Hershey, Jr. and Jason Cachara testified about the recorded post-*Miranda*[2] statements Appellant and Rea provided to them during the subsequent investigation. In relation to the October 30, 2011 robbery of the Super 8 Hotel, the audio recordings, which were admitted during trial, indicated that Appellant operated the getaway vehicle while Rea committed the robbery.

Colin Rea's recorded statement detailed Appellant's participation in the robbery of the Super 8 Motel. Rea indicated that the purpose of both robberies was to obtain money for Appellant's homeless girlfriend and daughter. In contrast to Appellant, who indicated that he did not know of Rea's intent to rob the Super 8 Motel, Rea stated that Appellant knew that the robbery would occur and understood his role as the getaway driver. Rea further clarified that Appellant drove to the designated meeting area, waited for Rea to return to the car following the robbery, and drove away.

As noted, *supra*, the jury convicted Appellant at the two related criminal action numbers of two counts of conspiracy to commit robbery, and one count each of robbery, attempted robbery, and conspiracy to commit theft. At criminal action number 2084-2011 the trial court sentenced

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellant to six to twelve years imprisonment.[3]  At criminal action number

2087-2011, the trial court imposed separate terms of two to four years

imprisonment on both attempted robbery and conspiracy to commit robbery.

Those sentences were imposed consecutive with each other and consecutive

to the sentences imposed at criminal action number 2084-2011, for a total

of ten to twenty years

Appellant failed to file a direct appeal; however, he filed a timely PCRA

petition and the trial court granted him leave to file a direct appeal *nunc pro*

*tunc*.  This appeal followed.  His timely Rule 1925(b) statement leveled three

issues, two of which he asserts on appeal as follows:

> 1.    Did the trial court's consecutive sentences at [criminal action number] 2087-2011 on Count 1 (attempted robbery) and Count 2 (conspiracy robbery) constitute an imposition of a sentence greater than the lawful maximum in that "[a] person may not be convicted of more than one inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime" pursuant to 18 Pa.C.S. [§] 906?
>
> 2.    Was the evidence produced at trial sufficient to support the guilty verdicts?

Appellant's brief at 7.

---

[3]   Concurrent sentences were fashioned as follows: (1) five to ten years imprisonment for conspiracy to commit robbery; (2) six to twelve years imprisonment for robbery; and (3) conspiracy to commit theft merged for the purpose of sentencing.

As Appellant's second issue, concerning the sufficiency of the evidence, would entitle him to discharge if it were established, we address that argument at the outset. In conducting a sufficiency of the evidence review, we examine all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider the evidence in the light most favorable to the verdict winner, herein the Commonwealth, drawing all possible inferences from the evidence in favor of the Commonwealth. *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*.

The evidence need not preclude the possibility of innocence entirely. The fact finder is free to believe, in whole or in part, whatever evidence it chooses. *Id*. Additionally, the Commonwealth may prove its case by circumstantial evidence alone. It is only when "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," that the defendant is entitled to relief. *Id*. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact finder." *Id*.

Appellant argues that the Commonwealth failed to adduce sufficient evidence to support the convictions for robbery (serious bodily injury) and conspiracy to commit robbery at criminal action number 2084-2011 in relation to the events that occurred on October 30, 2011, at the Super 8

Motel. The Crimes Code defines robbery, in pertinent, part as follows: "A person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(ii).

Stated plainly, Appellant contends that the Commonwealth failed to establish beyond a reasonable doubt that the victim, Mr. Patel, was in fear of immediate serious bodily injury, an element of § 3701(a)(1)(ii) and the concomitant offense of conspiracy to commit robbery. He relies upon Mr. Patel's testimony that, when Rea fired the weapon immediately prior to fleeing with the money, the noise it emitted sounded like a toy gun. From this statement, Appellant extrapolates the conclusion that the Commonwealth failed to establish beyond a reasonable doubt that Rea's actions placed Mr. Patel in fear of immediate serious bodily injury. While Appellant does not expressly invoke this argument to challenge the sufficiency of the evidence in relation to the attempted robbery of the Kenmar Motel on the following evening, he refers to the facts of that case, ostensibly to support his position that his brandishing of an identical replica

during that ordeal did not place those victims in immediate fear of serious bodily injury either. No relief is due.[4]

The evidence adduced during the trial sustains the jury verdict. First, it is beyond peradventure that the Commonwealth was not required to demonstrate that Mr. Patel was actually fearful of his life. **See Commonwealth v. Nelson**, 582 A.2d 1115, (Pa.Super. 1990) (even where threats did not produce intended fear, robbery conviction was supported by evidence that defendant announced robbery and brandished weapon in order to achieve goal). In fact, as we explained in **Commonwealth v. Hopkins**, 747 A.2d 910 914 (Pa.Super 2000), "For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of 'immediate serious bodily injury.'" We concluded, "The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of 'serious bodily injury.'" **Id**. Indeed, as the ultimate arbiter of fact, it was up to the jury to determine whether "[the] victim was in mortal fear when a[n] [assailant] visibly brandished a firearm." **Id**. at 915-915. Thus, the victims' actual fear is not dispositive.

_____

[4] As Appellant challenges only whether Rea placed the respective victims in immediate fear of serious bodily injury, that is the only element of the offenses that we address.

As noted *supra*, Mr. Patel testified that, when Rea stormed into the motel lobby, pointed what appeared to be a handgun at his chest, and demanded money, he was "really scared." N.T., 11/19/12, at 25-26. Mr. Patel had never been robbed before and was not at all familiar with guns. *Id*. at 25. In fact, notwithstanding Appellant's intimation that Mr. Patel was not affected by what he later discovered was a "toy gun," the certified record reveals that Mr. Patel was not aware that the apparent handgun that Rea had leveled at his chest during the ordeal was anything less than authentic. He only learned that the weapon was a "toy" after the robbery had been completed. The fact that the handgun purportedly could not actually inflict serious bodily injury is therefore irrelevant.

Furthermore, mindful that Appellant was charged with **attempted** robbery for his role in the offenses committed at the Kenmar Motel, Appellant's assertion that the evidence was insufficient because Mr. and Mrs. Crouse never feared immediate bodily injury is erroneous in fact and law. First, it is obvious that by brandishing an apparent firearm at Ms. Crouse and commanding, "give me your f**king money," Rea **attempted** to place the woman in fear of immediate serious bodily injury if she did not comply with his demands. The fact that Rea's attempt to scare Ms. Crouse into compliance might have been ineffectual does not negate the fact that his actions constituted a substantial step towards executing the robbery. Hence, assuming, arguendo, that Ms. Crouse never actually feared

- 11 -

immediate serious bodily injury, evidence of Rea's menacing conduct was sufficient to sustain the conviction for criminal attempt. Moreover, as noted *supra*, the facts of this case established that Ms. Crouse's belief that Rea was participating in a Halloween hoax, ceased when he started uttering obscenities. She explained, "I did start getting a little afraid when he demanded money." N.T., 11/19/12, at 58. Thus, both aspects of Appellant's claim fails.

Having found that the certified record supports the trial court's conclusion that the evidence adduced during the jury trial was sufficient to sustain the guilty verdicts for: (1) robbery graded as a first-degree felony and (2) criminal conspiracy to commit robbery at criminal action number 2084-2011; and (3) attempted robbery at 2087-2011, we next address Appellant's assertion that the consecutive sentences imposed at criminal action number 2087-2011 for the inchoate crimes of criminal conspiracy and attempted robbery were illegal.

The determination as to whether the trial court imposed an illegal sentence is a question of law. Our standard of review in cases dealing with questions of law is *de novo*, and our scope of review is plenary. **See Commonwelath v. Kimmel**, 125 A.3d 1272, 1275 (Pa.Super 2015) (*en banc*) ("A claim that convictions merge for sentencing is a question of law; therefore, our standard of review is de novo and our scope of review is plenary").

Pursuant to 18 Pa.C.S. § 906, regarding multiple convictions of inchoate crimes, "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." Herein, the trial court sentenced Appellant at 2087-2011 to consecutive sentences for attempted robbery and criminal conspiracy (robbery) for the crimes committed at the Kenmar Hotel on October 31, 2011. As the facts supporting both offenses stem from identical criminal acts, the offense merged for the purpose of sentencing.[5] **Commonwealth v. Cooke**, 492 A.2d 63 (Pa.Super. 1985) (sentence imposed on criminal conspiracy vacated under § 906 because conviction and sentence for inchoate crimes of criminal attempt and criminal conspiracy based on same action violated statute).

Judgment of sentence affirmed, in part, vacated, in part, and remanded for resentencing consistent with this memorandum. Record remanded. Jurisdiction relinquished.

_____

[5] The trial court and Commonwealth concede that the convictions and sentences on the two inchoate offenses violated 18 Pa.C.S. § 906, and both agree that a remand is necessary.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/1/2016