J-S40024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTINA REGUSTERS, | : | |
| | : | |
| Appellant | : | No. 869 EDA 2016 |

Appeal from the Judgment of Sentence October 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0005630-2013

BEFORE: OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 31, 2017**

Appellant, Christina Regusters, appeals from the October 5, 2015

Judgment of Sentence entered in the Philadelphia County Court of Common

Pleas following a jury trial.  After careful review, we affirm.

We summarize the relevant factual and procedural history, as gleaned

from the trial court's Pa.R.A.P. 1925(a) Opinion, as follows.  On the morning

of January 14, 2013, the victim's mother dropped N.R., the five-year-old

victim, off at Bryant Elementary School.[1]  Approximately ten minutes later,

---

[*] Former Justice specially assigned to the Superior Court.

[1] In her brief, Appellant refers to the minor victim by her full name.  Not only do we disapprove of this practice, but it is also contrary to 42 Pa.C.S. § 5988, which makes it a criminal offense for an officer or employee of the court to reveal the name of a minor victim of sexual abuse in documents available to the public.

Appellant signed N.R. out of school, claiming to be her mother.  Like N.R.'s mother, Appellant wore full Muslim garb covering everything but her eyes.  She also appeared to be pregnant.  After the school day was over, employees of the daycare N.R. attended came to pick her up as they do every day.  When they arrived at school, they discovered that someone other than her mother had signed her out for the day.

N.R. remained missing until approximately 4:00 A.M. the next morning when a man heard her calling for help from inside a playground.  Wearing nothing but an oversized t-shirt, N.R. told the man that she had escaped from her kidnappers.  The man immediately called the police, who transported her to the Children's Hospital of Philadelphia.

A physical examination revealed evidence of extensive sexual abuse, specifically vaginal and anal penetration by a foreign object.  The anal injury was so "severe and divertive that a colostomy was required to allow the injury to heal properly."  Trial Court Opinion, filed 8/24/16 at 4.  While doctors found liquid stool in her anal and genital areas, they did not recover any sperm.  Investigators also swabbed the t-shirt she was wearing for DNA evidence, and found Appellant's DNA, N.R.'s DNA, and the DNA of the man who found N.R. at the park.

On the same day she was found, N.R. recounted the details of her abduction briefly to a member of the Special Victims Unit of the Philadelphia Police Department, and later, in more detail, to a forensic investigator

assigned to the case. N.R. also described her experience to the forensic investigator on a second occasion ten days later. She recalled that Appellant, who first introduced herself to N.R. as Rashida, picked her up from school, walked her to a house where she lifted her over a stone wall, placed her in a bag that she removed from under her Muslim garb, carried her into the house, and took her into a bedroom. Subsequently Appellant ordered N.R. to remove her clothes and glasses, put on a blindfold, and get under the bed.

Later, Appellant joined N.R. under the bed and introduced herself again, this time as a woman named China. Significantly, China was Appellant's childhood nickname. While under the bed, Appellant warned N.R. about a deaf man, briefly showing her his picture.[2] She warned that N.R. must be quiet, or else the man would harm her. N.R. stated that Appellant penetrated her vagina and anus with something that felt like a stick or a toothpick because it was sharp. Afterwards, Appellant gave N.R. a bath, and brought her to the playground where she was eventually found at 4:00 A.M.

While Appellant kept N.R. blindfolded throughout most of the encounter, she had removed the blindfold briefly while they were underneath

_____

[2] While Appellant showed N.R. a picture of the deaf man, there is no evidence to suggest that he actually existed or took part in the kidnapping or sexual assault of N.R.

the bed to show N.R. the picture of the deaf man, when she gave N.R. a bath, and when she walked N.R. to the playground where she was found. N.R. described China as having light skin and light eyes.

N.R. also remembered hearing a talking bird that repeated the phrase "You're fired." Detectives used the information about the talking bird to solicit tips from the public, leading them to Appellant. Additionally, when detectives drove N.R. around the neighborhood where she was found, she pointed to a home with a green door near the garage of a home as the location to which she was taken. Both Appellant and the talking bird resided in that home.

At the time of the kidnapping, Appellant was an employee of the same daycare that N.R. attended, and she had previously interacted with her. On the day of the kidnapping, however, Appellant was serving a three-day suspension from the daycare for an unrelated incident and was not working. Appellant claimed she slept in at home that day because she was feeling ill. She lived with her Aunt, Valerie Williams, and her young cousins.

Police searched Appellant's home and seized all computers and cell phones. A digital search of Appellant's computer found that a user had conducted Internet searches for Muslim clothing, child pornography featuring young girls, whether taking a bath could remove DNA evidence, what type of evidence police collect in a rape kit, and for information regarding N.R.'s disappearance and the investigation that followed. It was not immediately

clear who had conducted the searches, as the computer was not password protected and multiple people lived in the home. None of the victim's DNA was found in the house; Appellant's aunt testified that Appellant had recently disposed of the rug that had previously been underneath the bed. Appellant matched the description N.R. provided and lived in the home N.R. identified, and police arrested her.

Appellant's case proceeded to a jury trial, where, *inter alia*, N.R., N.R.'s mother, the detectives who interviewed N.R., the forensic investigator who interviewed N.R., and Appellant's aunt, Valerie Williams, testified.[3] On February 12, 2015, the jury convicted Appellant of Aggravated Assault, Involuntary Deviate Sexual Intercourse with a Child (Serious Bodily Injury), Kidnapping, Unlawful Restraint of a Minor–Risk of Bodily Injury, and Concealment of the Whereabouts of a Child. She was sentenced to 40 years' to life imprisonment followed by 20 years' probation.

Appellant timely appealed. Appellant and the trial court both complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the Commonwealth adduced sufficient evidence from which a trier of fact could conclude beyond a reasonable doubt that Appellant Regusters committed the crimes for which she was found guilty.

---

[3] The trial court questioned N.R. in the presence of defense counsel and the prosecution and found her competent to testify. N.T., 8/27/14, at 126.

2. Whether the Court abused its discretion in failing to order a new trial where, in light of the inconclusiveness of inculpatory evidence proving that the Appellant engaged in criminal activity, the guilty verdict was against the weight of the evidence and constituted a miscarriage of justice.

Appellant's Brief at 4.

### Sufficiency of the Evidence

Appellant first challenges the sufficiency of the evidence, averring that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that she was the person who committed the crimes of which the jury convicted her.

Evidentiary sufficiency is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). In determining whether the evidence was sufficient to support a verdict, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the verdict winner, the Commonwealth herein. ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*).

When reviewing the sufficiency of the evidence, a court does not need to be convinced that the evidence supports the conviction beyond a reasonable doubt. ***Commonwealth v. Martin***, A.3d 706, 729 (Pa. 2014). Rather, "a court must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict." ***Id***. Moreover, the

Commonwealth can sustain its burden "by means of wholly circumstantial evidence." ***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015).

Here, Appellant challenges the evidence supporting her identification as the perpetrator of the crimes. Regarding the issue of identity, our Supreme Court has stated that in order to sustain a conviction, the Commonwealth must prove beyond a reasonable doubt regarding the identity of the accused as the person who committed the crime. ***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973). Such proof need not be positive, certain, or even direct, as a defendant may be convicted based wholly upon circumstantial evidence. ***Id***.

After a thorough review of the record, the briefs of the parties, the applicable law, and the trial court Opinion, we conclude that Appellant's claim lacks merit. While no one could positively identify Appellant as the person who committed the crimes charged, there was overwhelming circumstantial evidence to sustain the jury's verdict finding her guilty.

The t-shirt N.R. wore when she was found contained DNA from the Appellant. Additionally, N.R.'s mother did not recognize the t-shirt and had never seen her wearing it. N.T., 8/27/14, at 38.

When detectives drove N.R. around the neighborhood where she was found, she pointed to the green door leading into the garage area of Appellant's house, and identified it as the house where she was taken. Critically, the victim told police that she had heard a talking bird in the

house that repeated the phrase "You're fired." When detectives searched Appellant's residence, they came across a talking bird that repeated that same phrase.

As an employee of the daycare that N.R. attended, Appellant knew N.R. and was aware that her mother wore Muslim garb that covered everything but her eyes. Video surveillance near Appellant's house showed N.R. wearing a jacket that belonged to Appellant's aunt walking with the woman in Muslim garb.

When investigators asked N.R. for information about her captor, not only did her description of China as having light skin and light eyes match Appellant's description, but also the name China was Appellant's childhood nickname.

Further, Appellant's Internet search history revealed a trove of incriminating activity. A forensic analysis of Appellant's computer showed searches for child pornography, involving the type of sexual acts performed on the victim, in addition to where to buy Muslim garb, whether taking a hot bath or shower could remove any DNA evidence, what type of evidence authorities collect in a rape kit, and for information on the police investigation into the victim's case.

Here, in support of her sufficiency challenge, Appellant claims that she could not have been the perpetrator because she was not pregnant. This claim falls flat. N.R. had recounted to her mother that the woman who

abducted her had an enlarged stomach not because she was pregnant, but because of a bag stuffed in her clothing. N.R. had stated that, prior to taking her into the home, Appellant had taken the bag out of her clothing, put N.R. in the bag, and carried her into the house. Moreover, Appellant's aunt testified that she saw Appellant carrying something into the house at approximately 9:00 A.M. on the morning the abduction took place, which corroborated N.R.'s allegations. At the time, she noted to herself that it was odd that Appellant had been out so early in the morning, considering she claimed to be ill at the time. The testimony of Appellant's aunt also contradicted Appellant's claim that she slept in that morning.

Although Appellant concedes that circumstantial evidence can support a verdict, she nonetheless argues, with a self-serving characterization of the evidence, that the evidence presented at trial does not establish with certainty that she was the person who abducted and sexually assaulted N.R. Her argument ignores our standard of review. This court must view all of the evidence in the light most favorable to the Commonwealth as the verdict winner, and we may not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Melvin*, 103 A.3d 1, 39-40. (Pa. Super. 2014). Contrary to Appellant's argument, the inferences the jury drew were reasonable regarding Appellant as the perpetrator in light of the overwhelming circumstantial evidence.

Viewing these facts and all reasonable inferences to be drawn therefrom in the light most favorable to the verdict winner, we conclude that the circumstantial evidence presented at trial connecting Appellant to the crimes charged was sufficient to sustain the convictions.

### Weight of the Evidence

We next address Appellant's assertion that the jury's verdict was against the weight of the evidence because the "paucity of inculpatory evidence in the instant case constituted a shocking miscarriage of justice." Appellant's Brief at 47.

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Id.*

Since the trial court judge was present for the trial and heard the evidence presented, this Court "will give the gravest consideration" to the determinations made by the trial judge as to whether the verdict was against the weight of the evidence and that a new trial should be granted in the interest of justice. *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2013). Consequently, appellate review of a weight claim solely

assesses whether the trial court judge committed an abuse of discretion in determining whether the verdict was against the weight of the evidence. *Id.*

Challenges to a trial court's determination that the jury's verdict is not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. *Id.* Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*. (quotation marks and citation omitted).

Appellant asks this court to reweigh the evidence against her, including the credibility of the victim's testimony, which it cannot do. As the trial court noted, "the significant evidence gathered from the subsequent interviews with the family, forensic data from the electronic devices, and surveillance footage created adequate circumstantial evidence to support the verdict." Trial Court Opinion at 11. Moreover, the trial court also stated that any potential discrepancies in the victim's testimony "did not result in a verdict that shocks the conscience." Trial Court Opinion at 11.

We agree with the trial court that the jury's verdict was not against the weight of the evidence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017